No. 95,860

STATE OF KANSAS, *Appellee*, v. JOSHUA DELORE PATTON, *Appellant.*
(195 P.3d 753)

Opinion filed November 14, 2008.

*Autumn L. Fox*, of Abilene, argued the cause, and *Doug Thompson*, of Thompson Law Office, of Chapman, was on the brief for appellant.

*Daryl E. Hawkins,* assistant county attorney, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal arises on petition for review of our Court of Appeals' decision foreclosing a late appeal of sentence pursued by defendant Joshua Delore Patton. Patton seeks to take advantage of this court's ruling in *State v. McAdam,* 277 Kan. 136, 83 P.3d 161 (2004), through application of this court's decision in *State v. Ortiz,* 230 Kan. 733, 640 P.2d 1255 (1982).

### *Factual and Procedural Background*

Patton was originally charged with seven drug-related offenses. He secured retained counsel, and he agreed to plead guilty to one count of attempted manufacture of methamphetamine and one count of possession of anhydrous ammonia in an unapproved container. His plea agreement—signed by him, his lawyer, and an assistant county attorney—was filed March 3, 2003, and included the following language:

"The Defendant waives his right of appeal, and waives his right to file any motions under K.S.A. 60-1507 arising from this matter. . . . The Defendant agrees that he has read and understands the attached Waiver of Rights form and understands that the information contained therein is made a part of this agreement (that is incorporated by reference)."

The Waiver of Rights form does not appear in the record on appeal.

In exchange for Patton's guilty pleas, the State dismissed the remaining five charges against him and agreed to recommend a downward durational departure sentence and to not oppose dispositional departure to a nonprison sanction.

At sentencing, the district court judge accepted the parties' joint recommendation of a downward durational departure but rejected Patton's bid for a dispositional departure, noting that Patton had been unable to remain drug-free while on bond between the plea and sentencing hearings. The district judge told Patton that he had the right to appeal any of the judge's rulings or findings, "specifically, in regards to finding against you on the dispositional departure." The State did not object or otherwise attempt to correct this

misstatement of Kansas law. See K.S.A. 21-4721 (denial of downward dispositional departure not among appealable sentences).

No timely direct appeal was filed, although both Patton and his mother attempted to contact Patton's lawyer to pursue one.

In January 2004, this court issued its *McAdam* decision, holding that K.S.A. 65-4159(a) on unlawful manufacturing of a controlled substance, a severity level 1 felony, was identical to K.S.A. 65-4161(a) on unlawful compounding of a stimulant, a severity level 3 felony. Thus a defendant convicted of the greater offense can be sentenced only under the lesser penalty provision.

Within weeks of the *McAdam* decision, Patton filed a motion to correct illegal sentence. The district court denied the motion after a hearing, and a panel of our Court of Appeals affirmed. No. 92,682, unpublished opinion filed May 13, 2005. Patton filed a petition for review of the Court of Appeals' decision with this court.

While the petition for review was pending, Patton filed a K.S.A. 60-1507 motion, alleging that his retained lawyer had provided ineffective assistance of counsel by failing to file a timely sentencing appeal. The district court dismissed the motion without prejudice, because Patton's appeal on his motion to correct illegal sentence was not yet final.

After the petition for review on the motion to correct illegal sentence had been disposed of, Patton again filed a K.S.A. 60-1507 motion. He renewed his argument on ineffective assistance of counsel and sought permission to file a late appeal on the *McAdam* sentencing issue under this court's decision in *Ortiz*.

The district judge held an *Ortiz* evidentiary hearing in December 2005. He heard testimony that Patton's lawyer had faxed a letter to Patton's mother on the last day for a timely appeal of Patton's sentence, saying that he "had all the documents done to file the appeal," that doing so was against his advice, but that the decision was up to her. Patton's mother testified that the decision was not up to her, that it was up to her son, and that Patton had already told the lawyer repeatedly that he wished to appeal.

The district judge ruled that Patton should be permitted to file an out-of-time appeal, because of the lawyer's failure to abide by Patton's wish to file an appeal. This action is that appeal. Patton

challenges the severity level of the attempted manufacture crime and the sentencing judge's denial of his motion for dispositional departure.

The Court of Appeals' panel hearing this appeal refused to order resentencing under *McAdam*. Although the appellate judges agreed with the district judge that the facts of this case fit one of the *Ortiz* exceptions that would ordinarily permit a late appeal, they concluded that they nevertheless lacked jurisdiction because Patton had waived his right to appeal as part of his plea agreement. Unless that plea agreement was set aside, the court said, it could not address the merits of Patton's late appeal.

"Where a defendant bargained with the State and knowingly and voluntarily agreed to waive his or her right to appeal, in exchange for a sentence reduction and dismissal of additional charges, the district court cannot ignore the waiver because it stands as a bar to the defendant filing an appeal unless the plea agreement is set aside." *State v. Patton*, 37 Kan. App. 2d 166, Syl. ¶ 4, 150 P.3d 328 (2007).

Patton made two arguments on his petition for review to this court. He first addressed the merits of the waiver argument, specifically whether it could defeat *Ortiz* application and cut off this late appeal. Patton asserted that the language in his plea agreement could not divest the appellate court of jurisdiction over his *sentencing* appeal because it dealt only with his right to appeal his *convictions*. He also argued process, asserting that the Court of Appeals must be reversed because the issue of waiver was not properly before it. In support of this argument, he pointed to the absence of a discussion of waiver in the district court's decision and the State's failure to cross-appeal.

### Analysis

We begin our analysis by briefly addressing Patton's procedural argument. We disagree with his assertion that the Court of Appeals erred in reaching the issue of waiver.

The issue of subject matter jurisdiction may be raised at any time by a party or by the court, including an appellate court. See *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007). Our standard of review on the issue is unlimited. See *State v. James*, 276 Kan.

737, 744, 79 P.3d 169 (2003). Here, the possibility that Patton had knowingly and voluntarily waived his right to appeal his sentence had a more than purely theoretical potential to affect subject matter jurisdiction, because there was no question that Patton's lawyer did not file a notice of appeal within 10 days of sentencing, see K.S.A. 22-3608(c), and a timely notice of appeal ordinarily is jurisdictional. See *State v. Verge*, 272 Kan. 501, 521, 34 P.3d 449 (2001) (dismissal necessary if appellate jurisdiction lacking); *State v. Moses*, 227 Kan. 400, 404, 607 P.2d 477 (1980). The Court of Appeals did not err by addressing this possibility, even if it did so without urging by the State.

We also note, however, that the State's appellate brief was not silent on waiver. Rather, it included waiver among the reasons that the Court of Appeals should reject Patton's invocation of *McAdam* to obtain a new sentence on his attempted manufacture conviction.

We now turn to the merits of whether *Ortiz* applied to allow this appeal, in the absence of a knowing and intelligent waiver.

Kansas appellate courts have jurisdiction only as provided by law, see K.S.A. 22-3608, and an untimely notice of appeal usually leads to dismissal of an action. See *State v. Moses*, 227 Kan. at 404. In *Ortiz*, this court recognized three exceptions to the dismissal requirement. Although we applied none of the exceptions in that case, *Ortiz*, 230 Kan. at 736-37, we stated that fundamental fairness would allow a late appeal if a defendant (1) had not been informed of his or her right to appeal, (2) had not been furnished an attorney to perfect an appeal, or (3) had been furnished an attorney who failed to perfect an appeal. *Ortiz*, 230 Kan. at 735-36.

Our *Ortiz* decision languished in relative obscurity for 22 years, meriting minimal citation and less commentary before *McAdam* was decided in 2004. The three situations it outlined were characterized as "narrow exceptional circumstances." *State v. Willingham*, 266 Kan. 98, 101-02, 967 P.2d 1079 (1998).

At the point we filed the *McAdam* decision, the understandable desire of defendants to take advantage of its holding—and later a similar holding regarding K.S.A. 65-7006(a) and K.S.A. 65-4152(a)(3) in *State v. Campbell*, 279 Kan. 1, 106 P.3d 1129 (2005) (adopting reasoning of *State v. Frazier*, 30 Kan. App. 2d 398, 42

P.3d 188 [2002])—catapulted *Ortiz* into the common-law equivalent of superstardom. See *State v. Phinney*, 280 Kan. 394, 122 P.3d 356 (2005) (suggesting *Ortiz* could provide avenue to *McAdam*-based sentence reduction). From the vantage point of nearly 5 years beyond the *McAdam* decision, we can see that the rapidly multiplying number of Kansas cases citing *Ortiz* fall into three general categories.

In the first category are cases that merely refer to *Ortiz* as authority for reaching the merits of an out-of-time appeal but do not discuss the application of *Ortiz* exceptions in any detail. See *State v. Ehrlich*, 286 Kan. 923, 189 P.3d 491 (2008); *Mitchner v. State*, No. 97,729, unpublished opinion filed June 6, 2008 (affirming denial of K.S.A. 60-1507 after evidentiary hearing; plea knowingly and voluntarily entered); *State v. Pritchard*, No. 98,232, unpublished opinion filed June 6, 2008; *State v. Johnson*, No. 97,313, unpublished opinion filed April 18, 2008; *State v. Gregor*, No. 96,021, unpublished opinion filed November 21, 2007; *State v. Kotula*, No. 96,556, unpublished opinion filed November 21, 2007; *State v. Spooner*, No. 97,152, unpublished opinion filed November 21, 2007; *State v. Selvey*, No. 96,803, unpublished opinion filed October 26, 2007; *Gould v. State*, No. 96,309, unpublished opinion filed September 14, 2007; see also *State v. Thompson*, No. 98,257, unpublished opinion filed July 18, 2008 (remanding for *Ortiz* hearing); *Bliss v. State*, No. 97,753, unpublished opinion filed April 18, 2008 (remanding for *Ortiz* hearing); *State v. Chase*, No. 92,882, unpublished opinion filed May 13, 2005; *State v. Abbott*, 31 Kan. App. 2d 706, 71 P.3d 1173 (2003) (noting the out-of-time appeal had been retained pursuant to *Ortiz*); *State v. Ypma*, No. 89,447, unpublished opinion filed December 19, 2003 (noting untimely appeal had been retained pursuant to *Ortiz*); *State v. Vest*, No. 88,314, unpublished opinion filed August 29, 2003, *rev. denied* 276 Kan. 973 (2003) (noting appeal was before Court of Appeals pursuant to *Ortiz*); *State v. Hunter*, No. 89,703, unpublished opinion filed August 22, 2003 (noting appeal retained based on *Ortiz* exception); *State v. Patton*, 26 Kan. App. 2d 591, 992 P.2d 819 (1999) (same); *State v. Curry*, 21 Kan. App. 2d 178, 179, 897 P.2d 1053 (1995) (noting defendant entitled to appeal out-of-time "after

K.S.A. 60-1507 proceedings," citing *Ortiz*); *State v. Grant*, 19 Kan. App. 2d 686, 875 P.2d 986, *rev. denied* 255 Kan. 1005 (1994) (rejecting defendant's suggestion that untimely amended notice of appeal, purporting to raise additional issues not contained in timely original notice of appeal, should be entertained under *Ortiz*); *State v. Irvin*, 16 Kan. App. 2d 214, 821 P.2d 1019 (1991) (exercising jurisdiction over defendant's untimely appeal where defendant furnished an attorney for purpose of filing his appeal, but attorney failed to perfect and complete appeal); *State v. Wilson*, 15 Kan. App. 2d 308, 808 P.2d 434 (1991) (noting nothing in record supported application of *Ortiz*); *Robinson v. State*, 13 Kan. App. 2d 244, 767 P.2d 851 (1989), *overruled Brown v. State*, 278 Kan. 481, 101 P.3d 1201 (2004) (distinguishing untimely direct appeals from untimely appeals from postconviction rulings).

The second category of cases is populated by those that specifically discuss application of the *Ortiz* exceptions, which are not always completely consistent with each other. See *State v. Scoville*, 286 Kan. 800, 188 P.3d 959 (2008) (reversing Court of Appeals' affirmance of district court's denial of out-of-time appeal after *Ortiz* hearing; failure to inform of 10-day time limit justified direct appeal out-of-time, resentencing under *McAdam* appropriate); *State v. Hemphill*, 286 Kan. 583, 186 P.3d 777 (2008) (affirming Court of Appeals' remand for *Ortiz* hearing on late appeal of sentences); *State v. Unruh*, 39 Kan. App. 2d 125, 177 P.3d 411 (2008) (out-of-time appeal justified when defendant's appointed appellate counsel failed to perfect appeal); *State v. Godfrey*, No. 98,984, unpublished opinion filed September 19, 2008 (*Ortiz* exceptions do not apply when defendant was informed of his or her right to appeal); *State v. Adams*, No. 98,962, unpublished opinion filed September 19, 2008 (defendant cannot invoke *Ortiz* exceptions when the right to appeal was thoroughly explained in his or her plea agreement); *State v. Berry*, No. 98,950, unpublished opinion filed September 12, 2008 (*Ortiz* exceptions apply to indigent defendant and defendant that retains counsel as long as defendant was not informed of his or her right to appeal); *State v. LaFave*, No. 98,369, unpublished opinion filed September 12, 2008 (*Ortiz* exceptions apply when court fails to inform defendant of his or her

right to appeal and defendant receives incorrect information about appealing in his or her plea agreement); *State v. Larson*, No. 98,152, unpublished opinion filed September 12, 2008 (out-of-time appeal permitted because trial court failed to inform defendant of his right to appeal and counsel did not explain 10-day filing deadline); *State v. Denton*, No. 97,472, unpublished opinion filed August 22, 2008 (defendants not informed of their right to appeal may file an out-of-time appeal under *Ortiz* even when they plead guilty); *State v. Young*, No. 97,470, unpublished opinion filed July 3, 2008; *House v. State*, No. 97,333, unpublished opinion filed June 20, 2008 (*Ortiz* does not allow avoidance of time bar of K.S.A. 60-1507); *State v. Leslie*, No. 98,243, unpublished opinion filed June 13, 2008 (affirming denial of out-of-time appeal where record revealed defendant aware of limited appeal rights under plea agreement); *State v. Anderson*, No. 98,655, unpublished opinion filed June 6, 2008 (*Ortiz* does not extend exception to timely appeal requirement when counsel failed to advise of likelihood of success on appeal); *State v. Amack*, No. 98,478, unpublished opinion filed June 6, 2008 (late direct appeal permitted under third *Ortiz* exception; resentencing under *McAdam* appropriate); *State v. Sperling*, No. 97,820, unpublished opinion filed May 16, 2008 (invoking *Ortiz* exception to reach appeal filed prematurely); *State v. Gilliland*, No. 97,791, unpublished opinion filed May 9, 2008 (affirming denial of out-of-time appeal, holding no *Ortiz* exceptions apply); *State v. Christianson*, No. 97,790, unpublished opinion filed May 2, 2008 (reversing denial of out-of-time appeal under *Ortiz*, resentencing under *McAdam* appropriate); *State v. Reeves*, No. 97,344, unpublished opinion filed April 25, 2008 (first exception of *Ortiz* satisfied when sentencing court failed to inform defendant of his right to have attorney appointed for appeal); *State v. Collins*, No. 97,360, unpublished opinion filed April 18, 2008 (affirming denial of out-of-time appeal, holding no *Ortiz* exceptions apply); *State v. Barron*, No. 97,378, unpublished opinion filed April 11, 2008 (affirming *Ortiz* exception applied when "court did not specifically tell the defendant that his appointed attorney would represent him to file a notice of appeal and his attorney did not inform him that he would file the appeal for him"); *State v. Roberts*, No.

98,366, unpublished opinion filed April 4, 2008 (remand for *Ortiz* hearing to determine whether, despite district court failure to advise of time limit for filing appeal, right to appointed counsel, defendant otherwise aware of appeal rights); *State v. Rust*, No. 98,528, unpublished opinion filed April 4, 2008 (when both counsel, district court affirmatively advise defendant he or she has no right to appeal, such statements override any acknowledgment to contrary in written plea agreement, giving rise to *Ortiz* exception); *State v. Mendoza*, No. 97,660, unpublished opinion filed March 7, 2008 (reversing denial of out-of-time appeal under *Ortiz*; resentencing under *McAdam* appropriate); *State v. Gray*, No. 97,403, unpublished opinion filed February 22, 2008 (holding defendant entitled to appeal out-of-time under *Ortiz*; dismissing as moot because sentence served); *State v. Moore*, No. 97,424, unpublished opinion filed February 22, 2008 (reversing denial of out-of-time appeal, remanding for *Ortiz* hearing, written explanation of appellate rights did not adequately advise); *Shaw v. State*, No. 98,200, unpublished opinion filed January 25, 2008 (affirming denial of out-of-time appeal when no *Ortiz* exception applied); *State v. Harp*, 283 Kan. 740, 748, 156 P.3d 1268 (2007) (*Ortiz* exception may excuse defendant's untimely appeal of presumptive sentence when the defendant asserts change in law, challenges severity level of crime; when a direct appeal granted under an *Ortiz* exception, appeal subject to law in effect at time of grant); *State v. Thomas*, 283 Kan. 796, Syl. ¶ 2, 156 P.3d 1261 (2007) (appeal subject to law existing at time of grant under *Ortiz*); *Guillory v. State*, 285 Kan. 223, 170 P.3d 403 (2007) (*Ortiz* exceptions inapplicable to out-of-time appeal from summary denial of K.S.A. 60-1507 motion); *Casner v. State*, 37 Kan. App. 2d 667, 674-75, 155 P.3d 1202 (2007) (first exception of *Ortiz* satisfied when sentencing court fails to fully inform of right to appointed counsel on appeal; State cannot cross-appeal from ruling at *Ortiz* hearing on ground of fundamental fairness); *State v. Romero*, No. 96,215, unpublished Kansas Supreme Court opinion filed December 7, 2007 (entertaining merits of appeal after affirming district court's ruling that *Ortiz* permitted late appeal); *State v. Darnell*, No. 97,042, unpublished opinion filed November 16, 2007 (affirming denial of out-of-time appeal

when no *Ortiz* exception applied); *State v. Lowrey*, No. 97,048, unpublished opinion filed November 16, 2007 (affirming denial of out-of-time appeal when defendant failed to meet burden to prove he was not informed of 10-day time limit); *State v. Lenz*, No. 97,285, unpublished opinion filed November 9, 2007 (affirming denial of out-of-time appeal, holding no *Ortiz* exception applied); *State v. Rust*, No. 97,414, unpublished opinion filed November 2, 2007 (remanding for resentencing after determining late appeal permitted under *Ortiz*); *State v. Moyer*, No. 96,440, unpublished opinion filed September 21, 2007 (reversing denial of out-of-time appeal when defendant not advised of deadline for appeal); *State v. Flynn*, 274 Kan. 473, 477-78, 55 P.3d 324 (2002) (defendant's response to Supreme Court's show cause order on why untimely appeal should not be dismissed included affidavit asserting defendant wanted to appeal, instructed her attorney to appeal, believed attorney would file timely notice of appeal, but attorney failed to do so; affidavit sufficient to support review of untimely appeal under *Ortiz*); *State v. Dreiling*, 274 Kan. 518, 539-41, 54 P.3d 475 (2002) (defendant had attorney for purpose of perfecting appeal, but attorney failed to do so; "fundamental fairness require[d] this court to retain jurisdiction over the appeal"); *State v. Dugan*, 29 Kan. App. 2d 71, 25 P.3d 145 (2001), *rev. denied* (2001), *abrogated on other grounds Phinney*, 280 Kan. 394 (*Ortiz* does not supply appellate court with jurisdiction to entertain untimely appeal from a presumptive sentence); *Willingham*, 266 Kan. at 101-02 (defendant did not knowingly waive right to appeal, when district court failed to advise at sentencing of right to appeal, defense counsel did not advise of time limit); *State v. Barnes*, 263 Kan. 249, 261, 948 P.2d 627 (1997) (when defendant furnished attorney for purpose of filing notice of appeal, attorney failed to perfect, court would entertain untimely appeal filed 5 days after deadline pursuant to *Ortiz*); *City of Dodge City v. Hadley*, 262 Kan. 234, 237-39, 936 P.2d 1347 (1997) (court declines to overrule *Ortiz*, permits appeal filed late because of counsel's error); *State v. Medina*, 256 Kan. 695, 701, 887 P.2d 105 (1994) (counsel who files timely appeal that fails to raise all meritorious appealable issues not generally effective counsel; and *Ortiz* applies both when defendant furnished

counsel who fails entirely to perfect appeal, when counsel attempts to perfect an appeal but does so ineptly; remand for *Ortiz* determination); *State v. Shortey*, 256 Kan. 166, 168, 884 P.2d 426 (1994) (untimely appeal permitted when appointed counsel's affidavit establishes defendant did everything necessary to ensure appeal prosecuted); *State v. Redmon*, 255 Kan. 220, 222-23, 873 P.2d 1350 (1994) (circumstances warrant permitting untimely appeal when sentencing court's statement on record did not clearly inform defendant of rights concerning appeal; defendant had informed trial counsel of desire to appeal; counsel failed to perfect appeal; defendant contacted prisoner legal services, Appellate Defender Office, administrative judge in effort to appeal); *State v. Parker*, 23 Kan. App. 2d 655, 934 P.2d 987, *rev. denied* 262 Kan. 967 (1997), *abrogated on other grounds Phinney*, 280 Kan. 394 (*Ortiz* exceptions do not apply when appeal clearly would raise no issues appellate court could address); *State v. Thomas*, 21 Kan. App. 2d 504, 900 P.2d 874 (1995) (defendant's untimely appeal seeking conversion under sentencing guidelines denied despite agreement defendant not informed of right to appeal; court upholds denial when not justified by fundamental fairness; defendant not eligible for conversion; appeal would raise no addressable issues); *State v. Hervey*, 19 Kan. App. 2d 498, 501, 873 P.2d 188 (1994), *overruled without reference to Ortiz* by *State v. Waterbury*, 258 Kan. 614, 907 P.2d 858 (1995) (sufficient factual basis existed for appellate court to conclude *Ortiz* applied to permit untimely amended notice of appeal from denial of motion to modify; attorney appointed to perfect appeal ineffective in filing timely notice of appeal identifying only judgments previously appealed by same counsel in direct appeal); *State v. McDaniel*, 249 Kan. 341, 342-45, 819 P.2d 1165 (1991) (reversing ruling that *Ortiz* did not apply to permit untimely appeal; district court based ruling on defense counsel's experience); *State v. Mitchell*, 231 Kan. 144, 146-47, 642 P.2d 981 (1982), *overruled on other grounds State v. Nioce*, 239 Kan. 127, 716 P.2d 585 (1986) (when defendant not informed of right to appeal at time sentence imposed, did not know time frame for exercise of right, appeal considered out of time).

Cases in the third category form a subset of the second category. They discuss not only the *Ortiz* exceptions but in some way relate one or more of them to the constitutional law concept of fundamental fairness or procedural due process and/or the constitutional concept of effective assistance of counsel. See *Penn v. State*, 38 Kan. App. 2d 943, 173 P.3d 1172 (2008) (when, through counsel's errors, movant denied right to appeal adverse decision, movant denied right to competent counsel); *State v. O'Grady*, No. 97,341, unpublished opinion filed June 20, 2008 (limited discussion of permitting direct appeal out-of-time for resentencing under *McAdam* because of counsel's ineffectiveness); *Pouncil v. State*, No. 98,276, unpublished opinion filed May 30, 2008; *Schale v. State*, No. 97,475, unpublished opinion filed April 11, 2008; *Guillory v. State*, 285 Kan. 223, 170 P.3d 403 (2007) (*Ortiz* exceptions inapplicable to out-of-time appeal from summary denial of K.S.A. 60-1507 motion; no statutory right to appeal attached to this civil action); *Kargus v. State*, 284 Kan. 908, 169 P.3d 307 (2007) (right to competent counsel extended to discretionary appeals); *Swenson v. State*, 284 Kan. 931, 169 P.3d 298 (2007) (same); *State v. McConnell*, No. 97,253, unpublished opinion filed December 21, 2007; see also *Brown v. State*, 278 Kan. 481, 484-85, 101 P.3d 1201 (2004); *State v. Ransom*, 268 Kan. 653, 654, 999 P.2d 272 (2000) (defendant argued notice of appeal sufficient to give Court of Appeals jurisdiction; if not, defendant sought remand for *Ortiz* hearing; court held defendant entitled to have appeal heard, stating "[t]he appellate courts either have jurisdiction or [defendant]'s court-appointed attorney made a basic error depriving [defendant] of the appeal he requested"); *State v. McBride*, 23 Kan. App. 2d 302, 304, 930 P.2d 618 (1996) (defendant claimed trial counsel ineffective for failing to file a timely notice of appeal; court nevertheless declined to permit late appeal under *Ortiz* when appeal prevented on other separate, distinct jurisdictional grounds); *State v. Bost*, 21 Kan. App. 2d 560, 564, 903 P.2d 160 (1995) *superceded by statute* L. 1995, ch. 251, sec. 17 (court declined to consider application of *Ortiz* exception because defendant "makes no claims of ineffective assistance of counsel"; appeal failed on other separate, distinct jurisdictional grounds); *State v. McGraw*, 19 Kan. App. 2d 1001,

1003, 879 P.2d 1147 (1994) (fundamental fairness doctrine under-pinning *Ortiz* applies to permit jurisdiction over appeals filed too early, too late); *State v. Rios*, 19 Kan. App. 2d 350, Syl. ¶ 7, 869 P.2d 755 (1994) (same, holding "[i]n the interest of fundamental fairness, an appeal from a criminal conviction filed prior to sen-tencing may be entertained when [1] the trial court furnishes a defendant with an attorney who fails to properly perfect the appeal; [2] the State fails to raise the jurisdiction issue; and [3] the State does not claim prejudice from the fact the appeal was filed too early"); *State v. Cook*, 12 Kan. App. 2d 309, 741 P.2d 379 (1987) (fact notice of appeal not filed in criminal case, absent indication in record defendant desired to appeal but precluded from doing so because of attorney error, insufficient to support ineffective as-sistance of counsel claim; defendant not entitled to evidentiary hearing to determine whether she waived right to appeal; defend-ant advised of right to appeal, right to have appointed counsel, nothing in record indicated she failed to understand rights, pre-cluded from exercising them); compare *State v. Irvin*, 16 Kan. App. 2d 214, 821 P.2d 1019 (1991) (noting court's decision to allow untimely appeal, when defendant furnished attorney but attorney failed to perfect appeal "not dependent upon a finding by the trial court of ineffective assistance of counsel"). Our Court of Appeals also has extended allocation of *Ortiz* in two civil cases; they fit into this third category, as they mention the constitutional right to coun-sel. See *In re T.A.*, 30 Kan. App. 2d 30, 35-36, 38 P.3d 140 (2001) (grandparents' out-of-time appeal pursued under *Ortiz* rejected in visitation rights proceeding; grandparents have no fundamental right to effective counsel in such proceeding); *In re T.M.C.*, 26 Kan. App. 2d 297, 299, 988 P.2d 241 (1999) (parent's constitutional right to counsel in termination proceeding makes application of *Ortiz'* fundamental fairness exceptions appropriate).

A few of these cases, including at least one in each category, have also discussed whether counsel for a criminal defendant was appointed or retained. See, *e.g.*, *State v. Unruh*, 39 Kan. App. 2d 125, 126-31 (appointed attorney failed to perfect and complete appeal); *State v. Irvin*, 16 Kan. App. 2d at 217 (same); *State v. Berry*, No. 98,950, unpublished opinion filed September 12, 2008

(*Ortiz* exceptions apply to indigent defendants, defendants who can retain counsel). The majority have not. See, *e.g.*, *State v. Abbott*, 31 Kan. App. 2d 706, 71 P.3d 1173 (2003); *State v. Bost*, 21 Kan. App. 2d 560, 903 P.2d 160 (1995); *State v. Curry*, 21 Kan. App. 2d 178, 897 P.2d 1053 (1995); *State v. Grant*, 19 Kan. App. 2d 686, 875 P.2d 986, *rev. denied* 255 Kan. 1005 (1994). Some also have focused on the court's obligation to inform a defendant of his or her appeal rights. See *State v. Reeves*, No. 97,344, unpublished opinion filed April 25, 2008 (court obligated to inform defendant of right to appeal within 10 days, explain right to appointed attorney); *State v. Barron*, No. 97,378, unpublished opinion filed April 11, 2008 (same); *Casner v. State*, 37 Kan. App. 2d at 674 (defendant may file out-of-time appeal when court fails to inform of right to appeal). Some have focused on counsel's obligation to advise a client. See *Scoville*, 286 Kan. at 807 (defendant may not appeal out-of-time when evidence proves counsel informed defendant of his rights to appeal); *State v. Willingham*, 266 Kan. at 100-01 (failure of court to advise defendant not fatal if counsel informs defendant of appeals' process).

Relatively recent case law discussing *Ortiz* and its underpinning of fundamental fairness includes *Guillory v. State*, 285 Kan. 223, in which we ruled that *Ortiz* could not be applied to allow a late appeal from denial of a K.S.A. 60-1507 motion. *Guillory*, 285 Kan. at 228-29. We emphasized in *Guillory* that fundamental fairness related to the fact that, in each of the three situations outlined in *Ortiz*, the defendant would have been deprived "of a right to which he or she was entitled by law." *Guillory*, 285 Kan. at 228. We said that a defendant's right to be informed about the possibility of appeal and to be provided counsel for that purpose were statutory and that a defendant's right to effective performance had constitutional dimension. *Guillory*, 285 Kan. at 228.

Also, in *Kargus v. State*, 284 Kan. 908, 169 P.3d 307 (2007), on the way to setting forth rules for when counsel must file a petition for review after denial of a direct appeal, we engaged in a full comparison of the standards applicable under (1) the second and third of the three *Ortiz* exceptions, which implicate adequacy of counsel's performance; (2) the performance and prejudice prongs

of Sixth Amendment ineffective assistance of counsel analysis pursuant to *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), which this court adopted in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985), and which we have applied to allegations of constitutionally deficient representation in the course of a proceeding; and (3) *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000), when counsel's behavior has caused complete forfeiture of a proceeding. *Kargus*, 284 Kan. at 918-22.

We stated in *Kargus* that Kansas had never directly applied *Flores-Ortega* to determine whether an attorney provided ineffective assistance in failing to file an appeal. Rather, under our "somewhat different approach," *i.e.*, *Ortiz*, there could, in limited circumstances, be a "two-step process. The first step . . . focuses upon the three exceptions and is applied in every *Ortiz* analysis. Under the second step, ' "A defendant properly informed of his appellate rights may not 'let the matter rest' . . . and then claim that he did not waive his rights to appeal." ' " *Kargus*, 284 Kan. at 922. We characterized this second step, necessarily applicable only when a defendant pursued a late appeal under the second or third exceptions of *Ortiz*, as a "type of prejudice requirement." *Kargus*, 284 Kan. at 922.

We need not repeat the rest of our *Kargus* discussion here. Suffice it to say that the decision exposed the possibility of analytical tension and confusing overlap among *Ortiz, Strickland,* and *Flores-Ortega*. That possibility, and the rising flood of *Ortiz*-based arguments we observe in cases coming before our Court of Appeals and in petitions for review addressed to this court—many seeking extremely fact-specific and thus not especially useful rulings on exactly which information about direct appeal must be imparted, and by whom, and when, and on whether defendant's oral or written statements or behavior constitute a waiver, and on what measures defense attorneys are required to take to preserve their clients' appeal rights when there has been no specific direction from those clients—motivate us to attempt clarification and, to the extent necessary, reconciliation of the controlling and persuasive law on the permissibility of late criminal appeals in Kansas.

To begin, it is important to recognize what *Ortiz* did not do. It did not endow criminal defendants with any additional constitutional rights. It did not impose affirmative duties on counsel or the court. It did not set up new requirements that must be met to prevent a late appeal. Arguments based on any of these approaches twist its intention and application.

*Ortiz* merely recognized the basic principle that a criminal defendant enjoys certain procedural due process protections, not only at trial or plea but also on appeal. These protections form the parameters and fill in the content of fundamental fairness; when they are ignored or violated, a remedy is necessary. We set out three narrowly defined, truly exceptional circumstances, when that remedy takes the form of permission for a late direct appeal.

We place conscious emphasis on "exceptional." Even after *Ortiz*, even in the glaring light emitted by its recent superstardom, the general rule remains that timely filing of a notice of appeal is indispensable and jurisdictional.

The *Ortiz* court relied on *Brizendine v. State*, 210 Kan. 241, 242-44, 499 P.2d 525 (1972). In that case, counsel had been appointed to perfect a defendant's direct appeal from his conviction of burglary. Because of a misunderstanding, the appeal was not perfected. Defendant filed a K.S.A. 60-1507 motion, alleging that his counsel's failure to perfect the appeal necessitated his discharge from confinement. The district judge rejected discharge as a remedy but gave the defendant the option to take an out-of-time direct appeal from his conviction. On appeal, this court affirmed the approach, including the optional remedy of out-of-time appeal. *Brizendine*, 210 Kan. at 244.

In so holding, this court noted that several federal courts had expressed a similar amenability to a limited exception, when ineffective assistance of counsel had prevented filing of a timely direct appeal. See *Brizendine*, 210 Kan. at 244 (citing, *inter alia, Kent v. United States*, 423 F.2d 1050 [5th Cir. 1970]; *Benoit v. Wingo*, 423 F.2d 880 [6th Cir. 1970]; *Atilus v. United States*, 406 F.2d 694 [5th Cir. 1969]).

*Ortiz* specifically held that any exception to the general rule requiring a timely notice of appeal for jurisdiction was "limited."

*Ortiz*, 230 Kan. at 736. And it relied upon a decision of the Fifth Circuit for the idea that a defendant who had been properly informed of his or her appellate rights could not " 'let the matter rest' " and avoid waiver. *Ortiz*, 230 Kan. at 736 (quoting *Norris v. Wainwright*, 588 F.2d 130, 137 [5th Cir. 1979] [quoting *Worts v. Dutton*, 395 F.2d 341, 344 (5th Cir. 1968)]). *Norris* had specifically stated that neither the Sixth Amendment nor the Fourteenth Amendment to the United States Constitution required the record to reflect that a defendant "made a knowing and intelligent decision not to appeal before he [or she] can be precluded from appellate review." *Ortiz*, 230 Kan. at 736 (quoting *Norris*, 588 F.2d. at 137). Neither the State nor the court would have to demonstrate a subjective waiver, *Ortiz* said. Rather,

"[t]he courts only can be expected and required to show on the record that a defendant was advised of the right to appeal and that an attorney was or would have been appointed to assist the defendant in such an appeal. . . . [W]hen that is done, there is no further requirement that will enable a defendant to obtain a right of appeal [out-of-time] merely because he or she asserts that no knowing and intelligent decision not to appeal was made." 230 Kan. at 736.

*Ortiz* did not apply the "exception recognized in *Brizendine*" to defendant Celestino Ortiz in that case. After conviction and sentencing, Ortiz signed a written waiver of his right to appeal. He had been provided with an attorney and an interpreter before doing so, and the waiver recited that it had been read and explained to him before signature. Our opinion concluded: "No lack of fundamental fairness is shown which would justify authorizing an appeal [out-of-time] at this late date." *Ortiz*, 230 Kan. at 736-37.

Our syllabus in *Ortiz* repeated that the limited exceptions to the requirement of timely notice to support appellate jurisdiction existed "in the interest of fundamental fairness," invoking a due process rather than a Sixth Amendment right to counsel concept. See *Ortiz*, 230 Kan. 733, Syl. ¶ 3; see also K.S.A. 20-111 (syllabus shall contain holding of the court).

It is evident to us today that what have come to be known in Kansas as the three "*Ortiz* exceptions" are grounded not only in fundamental fairness (here, procedural due process) but in the Sixth Amendment right to counsel. The first of the exceptions—

applicable when a defendant was not informed of the right to appeal—goes to procedural due process alone. The second and third exceptions—applicable when a defendant was not furnished an attorney to perfect an appeal or was furnished an attorney for that purpose who failed to perfect and complete an appeal—go to the right of counsel and effectiveness of counsel. We have attempted to take the distinction in the constitutional bases of the exceptions into account in developing the following rules.

First *Ortiz* Exception

A criminal defendant may qualify to take a late appeal under the first *Ortiz* exception if he or she has been denied basic procedural due process, *i.e.*, timely and reasonable notice and an opportunity to be heard. See *State v. Willingham*, 226 Kan. 98, 100-01, 967 P.2d 1079 (1998); *State v. Reeves*, No. 97,344, unpublished opinion filed April 25, 2008; *State v. Barron*, No. 97,378, unpublished opinion filed April 11, 2008; *Casner v. State*, 37 Kan. App. 2d 667, 674, 155 P.3d 1202 (2007).

Three Kansas statutes provide specific procedural safeguards of the right to appeal by certain criminal defendants. First, K.S.A. 22-3210(a)(2) requires a judge who accepts a felony guilty or nolo contendere plea to inform the defendant of the "consequences" of the plea. These consequences include waiver of the right to appeal any resulting conviction. K.S.A. 22-3424(f) instructs that a sentencing judge must inform a defendant who has gone to trial of "defendant's right to appeal" and of the right of a person who is unable to pay the costs of an appeal to appeal *in forma pauperis*. We note that *Phinney*, 280 Kan. at 402, and *State v. Pickerill*, No. 93,595, unpublished opinion filed July 28, 2006, *rev. denied* 282 Kan. 795 (2006), have interpreted this provision broadly to apply to all defendants. In keeping with these precedents, we hold explicitly that the requirements of K.S.A. 22-3424(f) apply regardless of whether a defendant went to trial and regardless of whether he or she is indigent. K.S.A. 22-4505 requires the district judge to inform an indigent felony defendant of the "right to appeal . . . [a] conviction" and the right to have an attorney appointed and a transcript of the trial record produced for that purpose.

Due process is denied—and an out-of-time appeal may be permissible under the first *Ortiz* exception—if a district judge fails to abide by one of these statutes, as they have been interpreted by our earlier case law. Thus a district judge must inform a criminal defendant at sentencing, regardless of whether the defendant has entered a plea or gone to trial, that: (1) a right to appeal the severity level of the sentence exists; (2) any such appeal must be taken within 10 days (see *Phinney*, 280 Kan. at 400; *Willingham*, 266 Kan. at 100-01 [citing *Mitchell*, 231 Kan. at 146]); and (3) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal. Compare Fed. R. Crim. P. 32(j) (allocating to court responsibility to inform criminal defendant of right to appeal).

The evidentiary burden of showing that the district judge failed to communicate one or more of these three pieces of information at sentencing is on the defendant, who must demonstrate deficiency from the transcript of the sentencing hearing. Based on analogous United States Supreme Court decisions, we are confident that this allocation of the evidentiary burden does not offend due process.

In *Medina v. California*, 505 U.S. 437, 120 L. Ed. 2d 353, 112 S. Ct. 2572 (1992), the United States Supreme Court held that, while the criminal trial of an incompetent defendant would violate due process, there was no due process violation in a statutory presumption of competence, which placed the burden on defendant to prove his or her incompetence by a preponderance of the evidence. In so holding, the *Medina* Court recognized that the traditional balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), that applied to procedural due process claims in civil cases, did not provide an appropriate framework for assessing the validity of state procedural rules in criminal cases. *Medina*, 505 U.S. at 442-43. Rather, the appropriate analytical approach set forth in *Patterson v. New York*, 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977), governs.

The issue in *Patterson* was whether defendant's conviction of second-degree murder under a New York statute deprived him of due process by placing on him the burden to prove, by a prepon-

derance of the evidence, the affirmative defense of acting under the influence of extreme emotional distress, in order to reduce the crime to manslaughter in the first degree. The Court held it did not. *Patterson*, 432 U.S. at 209-10. In particular, the *Patterson* decision held that the power of a State to regulate procedures for carrying out criminal laws, including the burden of producing evidence, "is not subject to proscription under the Due Process Clause unless it 'offends some principle of justice so rooted in the traditions and conscience of our people so as to be ranked as fundamental.' " *Patterson*, 432 U.S. at 201-02; see *Medina*, 505 U.S. at 445.

The high Court's rationale underlying this "less intrusive" inquiry into due process concerns in criminal cases is that many aspects of criminal procedure are already defined by specific guarantees of the United States Constitution Bill of Rights, and that, beyond those, the Due Process Clause has limited operation. See *Medina*, 505 U.S. at 443 (citing, *e.g.*, *Dowling v. United States*, 493 U.S. 342, 352, 107 L. Ed. 2d 708, 110 S. Ct. 668 [1990]). Although we have not previously adopted the "less intrusive" due process analysis set out in *Medina* for criminal cases, we have acknowledged or relied upon other aspects of that decision. See *State v. Davis*, 281 Kan. 169, 176, 130 P.3d 69 (2006) (citing *Medina* for proposition that criminal trial of incompetent violates due process); *State v. McKinney*, 265 Kan. 104, 107, 961 P.2d 1 (1998) (citing *Medina* in holding Kansas' competency statutes, presuming competence and implicitly requiring defendant to prove incompetence by preponderance of the evidence, do not violate due process); *State v. Cellier*, 263 Kan. 54, 948 P.2d 616 (1997) (same).

When the applicability of the first *Ortiz* exception is in issue, if the defendant discharges the burden of demonstrating from the sentencing hearing transcript that the district judge failed to communicate one or more of the three required pieces of information, the State still may prevent a late appeal by proving that the defendant possessed actual knowledge of all of the required information by some means other than the district judge's oral statements at sentencing. The source of such actual knowledge may be counsel's advice, the wording of an agreement signed by the de-

fendant, or some other person or document; but the State bears the evidentiary burden on this point.

If the sentencing hearing transcript demonstrates that the district judge did not adequately inform the defendant orally, and the State is unable to demonstrate that the defendant had actual knowledge of the required information from some other source, the defendant must then prove that, had he or she been properly informed, a timely appeal would have been sought. This evidentiary burden rests on the defendant. This requirement for application of the first *Ortiz* exception is consistent with this court's original admonition that a defendant may not "let the matter rest" and with our previous decisions. See *Phinney*, 280 Kan. at 405-06; *Mitchell*, 231 Kan. at 147. In addition, we believe it is true to United States Supreme Court precedent. See *Peguero v. United States*, 526 U.S. 23, 24, 143 L. Ed. 2d 18, 119 S. Ct. 961 (1999) (relief from sentencing court's error in failing to inform defendant of appeal right requires showing of prejudice); *Cody v. United States*, 249 F.3d 47, 52 (1st Cir. 2001); *Soto v. United States*, 185 F.3d 48, 55 (2d Cir. 1999).

## Second *Ortiz* Exception

As stated above, the Sixth Amendment right to counsel informs the second *Ortiz* exception, which focuses on whether the defendant has been provided counsel. Read literally, the second exception would apply only to those defendants for whom appointed counsel is provided at public expense, *i.e.*, those who are indigent at the point an appeal needs to be taken. Read sensibly, it means the same thing.

However, not all of our *Ortiz* cases appear to have read the exception so narrowly. Compare *Phinney*, 280 Kan. at 405-06, with *Ortiz*, 230 Kan. at 735-36, and *Brizendine*, 210 Kan. at 243. Indeed, although most cases in this area have involved indigent defendants, see, *e.g.*, *Phinney*, 280 Kan. 394; *Willingham*, 266 Kan. at 98; *Ortiz*, 230 Kan. at 733; *Brizendine*, 210 Kan. 241; *State v. Singleton*, 33 Kan. App. 2d 478, 104 P.3d 424 (2005); some have not, *Bryant v. State*, 280 Kan. 2, 118 P.3d 685 (2005); and the difference has been of no significance.

We rectify this anomaly now by stating that the second *Ortiz* exception applies only to defendants who were indigent when they desired to take a timely appeal. A defendant who had appointed counsel at the district court level is entitled to have counsel appointed for the purpose of appeal; either district court counsel may continue representation, or new counsel must be appointed. A defendant who, on the other hand, had the resources to retain counsel at the district court level and had been advised by the court of the right to be appointed counsel will be assumed to have the resources to retain counsel for any desired appeal as well, unless he or she informs the sentencing judge that the situation is otherwise. *Ortiz* did not create additional constitutional rights, and it did not create a common-law right to appointed appellate counsel for those who can afford to retain a lawyer. If proceedings through sentencing have exhausted a given defendant's resources to retain an attorney to handle an appeal, the defendant must make a timely motion for appointment of counsel for appeal. If the defendant fails to seek such an appointment, then he or she cannot later complain that counsel was not furnished to facilitate timely filing of a notice of appeal under the second *Ortiz* exception.

Further, to pursue a late appeal under the second *Ortiz* exception, the defendant bears the evidentiary burden of demonstrating that he or she was in need of appointed counsel to pursue an appeal and that no such counsel was appointed, despite a timely request. The defendant must also demonstrate that, had counsel been made available, he or she would have instructed counsel to file the appeal.

## Third *Ortiz* Exception

The third *Ortiz* exception allows a late appeal if a defendant was furnished an attorney for the purpose of an appeal but the attorney failed to perform. Again, read literally, the use of the word "furnished" could apply only to counsel appointed for an indigent defendant at public expense. However, read sensibly, this third exception, in contrast to the second exception, does not focus on whether a lawyer has been assigned to a case through any particular mechanism; it focuses on whether that lawyer performs up to a

minimum constitutional standard once that assignment is made. Thus we hold that the third *Ortiz* exception may apply to retained counsel as well as appointed counsel. A defendant who hires private counsel "furnishes" his or her own lawyer.

Furthermore, we hold that the standard of performance to be applied to measure the adequacy of appellate counsel under the third *Ortiz* exception is that found in *Roe v. Flores-Ortega*, 528 U.S. 470, 470-72, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000). That case distinguishes between situations in which counsel's perform- ance in the course of a proceeding is alleged to be deficient and those cases in which counsel's performance or failure to perform leads to forfeiture of a proceeding. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), governs the former and *Flores-Ortega* the latter. See *Flores-Ortega*, 528 U.S. at 476-86.

We have long employed *Strickland* to judge whether a criminal defendant received ineffective assistance of counsel under the Sixth Amendment in the course of a criminal proceeding in the district court. See *Chamberlain v. State*, 236 Kan. 650, 656, 694 P.2d 468 (1985) (adopting and applying *Strickland* two-part stan- dard). Under that standard, before counsel's assistance is deter- mined to be so defective as to require reversal of a conviction, the defendant must establish two things: first, that counsel's perform- ance was deficient, and second, that counsel's deficient perform- ance prejudiced the defense. See *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Likewise, we use an adapted version of the *Strickland* standard to judge whether a criminal defendant re- ceived ineffective assistance of counsel during the course of a direct appeal. See *Kargus v. State*, 284 Kan. 908, 919, 169 P.3d 307 (2007).

The situation contemplated by the third *Ortiz* exception is dif- ferent, involving as it does the complete destruction of the right to pursue a direct appeal through counsel's failure to file a timely notice or otherwise protect his or her client's right. As recognized in *Flores-Ortega*, where appointed counsel said he or she would file a notice of appeal on behalf of the defendant but failed to do so, no "presumption of reliability" can be afforded a "proceeding

. . . that never took place." Thus, the two-part *Strickland* deficiency-plus-prejudice analysis must bend.

Under *Flores-Ortega,* if appointed or retained counsel has failed to file or perfect a direct appeal by a criminal defendant, we will presume the existence of prejudice. This is not, however, the same as a finding of prejudice per se, requiring application of the third *Ortiz* exception. The defendant must still demonstrate that, but for counsel's failure, he or she would have taken a timely direct appeal. The defendant need not show, as he or she would have had to show if we were using the *Strickland* standard as our benchmark, that such a timely direct appeal would have been successful. Compare *Peguero,* 526 U.S. at 30-31 (O'Connor, J., concurring).

## Application of *Ortiz* Exceptions to Patton

In this case, Patton was informed of his right to appeal his sentence, although the district judge's misstatement of Kansas law meant he may have been misled about the issues that would be appropriate for appellate consideration. Patton had retained counsel who clearly understood that any appeal would be counsel's responsibility to perfect and otherwise pursue, and Patton expressed his desire to have an appeal filed.

This situation calls for application of the third *Ortiz* exception. Patton should be permitted to file a late direct appeal. The undisputed testimony in the record before us is that Patton did not "let the matter rest." He attempted to ensure that his lawyer would protect his appeal rights. Had the lawyer followed Patton's instructions, Patton would have been entitled to resentencing under *McAdam.*

One final note on general applicability of the *Ortiz* exceptions bears mention: The rules we have outlined in this opinion shall be applied to all cases not yet final on direct appeal and those to be appealed in the future. See *State v. Gould,* 271 Kan. 394, 414, 23 P.3d 801 (2001).

## Effect of Waiver Language in Plea Agreement

We now address the substance of the State's argument that, regardless of the applicability of any of the *Ortiz* exceptions, Patton

waived his right to appeal his sentence when he signed his written plea agreement.

A defendant who pleads guilty may still challenge the sentence imposed in some circumstances. *State v. Phinney*, 280 Kan. 394, 398, 122 P.3d 356 (2005). However, a "knowing and voluntary waiver by the defendant of his statutory right to appeal is generally enforceable." *State v. Campbell*, 273 Kan. 414, 424-25, 44 P.3d 349 (2002) (citing *United States v. Hernandez*, 134 F.3d 1435, 1437 [10th Cir. 1998]).

In *Campbell*, defendant Kenyon Campbell bargained with the State for a reduced sentence in exchange for his cooperation, testimony against another individual, and a waiver of his "right to appeal the verdict against him." 273 Kan. at 425. In his direct appeal, Campbell challenged both his convictions and sentence. The court entertained Campbell's challenge to his sentence but held that Campbell had knowingly and voluntarily waived his right to appeal his convictions when he entered into the sentencing agreement with the State.

In *State v. Boley*, 279 Kan. 989, 997, 113 P.3d 248 (2005), defendant Charles Boley had pleaded no contest to manufacture of methamphetamine. He appealed his sentence successfully and was resentenced in accord with *McAdam*. When the State sought to rescind the plea agreement based upon a mistake of law, this court held that the State was precluded from doing so. Boley did not breach his plea agreement by attacking his sentence. He had not agreed to advocate for any particular sentence; the agreement did not prohibit him from seeking a lesser sentence; and he had not waived his right to appeal or to argue about the severity level of his crime. We wrote:

"[T]he State bore the risk that Boley would appeal his sentence. The prosecutor could have protected against this risk by including a provision in the plea agreement requiring the defendant to waive his right to appeal or indicating that if the defendant successfully challenged his sentence, such action would be considered a breach of the agreement." *Boley*, 279 Kan. at 997.

In this case, again, the plea agreement stated that Patton waived "his right to appeal" and that he had read and understood an attached and incorporated "Waiver of Rights form." We do not have

the Waiver of Rights form in the record on appeal, so it can add nothing to our understanding of Patton's intent in signing the plea agreement. The waiver language in the agreement is general. Although, given its timing and other content, it must refer to appeal of Patton's two convictions, it need not be understood as specifically addressing his sentence for either offense, neither of which, of course, had yet been handed down.

In addition, the record shows that, when sentencing did occur, the district judge told Patton he had a right to appeal any of the judge's rulings or findings. The sentencing transcript demonstrates irrefutably that the judge told Patton his right to appeal remained intact, at least, incorrectly, as to denial of a downward dispositional departure, on which the waiver in the plea agreement had no bearing. The judge said that, if the plea agreement waiver was to concern "such issues," it should have stated that it "applied to all issues involved at sentencing."

Moreover, to the extent the immediately subsequent behavior of the defendant is revealing of his understanding of what he had waived and what he had not waived at the time of his plea and/or sentencing, there is no dispute that Patton attempted to appeal his sentence within 10 days. In other words, it is apparent he believed he would not be prevented from doing so. Counsel was on the same page. He would not have inquired of Patton's mother about her son's desire to appeal if counsel believed no right of appeal existed. See *State v. Harmon*, 243 S.W.2d 326, 330 (Mo. 1951) (appellate court should not hold criminal defendant waived right to appeal unless record, acts of defendant, all circumstances inconsistent with any other interpretation).

Furthermore, Patton is correct that the decisions relied upon by the Court of Appeals to dismiss his late appeal here actually support him. Those decisions involved defendants who had explicitly and unambiguously waived the particular appeal right they later sought to exercise. In *Ortiz* itself, the defendant had signed an explicit written waiver of his right to appeal his sentence, disqualifying himself from application of any of the exceptions permitting late appeals laid out in his case. *Ortiz*, 230 Kan. at 734; see also *Campbell*, 273 Kan. at 425 (defendant's plea agreement specifically

stated "[defendant] waives any right to appeal the verdict against him"); *State v. Willingham*, 266 Kan. 98, 101, 967 P.2d 1079 (1998) (in dicta, the court commented that the defendant may not have been granted the ability to file an out-of-time appeal if he had signed a written waiver of his right to appeal).

The Tenth Circuit and sister jurisdictions also have recognized the need to tread carefully when courts are asked to hold that a criminal defendant waived his or her right to appeal a sentence. See *United States v. Hahn*, 359 F.3d 1315, 1325-28 (10th Cir. 2004) (rejecting suggestion that presentencing waiver of appellate rights can never be enforceable, but noting defendant who waives right to appeal does not subject himself or herself to any sentence handed down by district court; court applies three-part test to determine whether waiver occurred, reading ambiguities in plea agreement in favor of defendant); *United States v. Lang*, 440 F.3d 212 (5th Cir. 2006) (waiver of appeal in plea agreement does not deprive appellate court of jurisdiction over appeal of defendant's sentence); *United States v. Story*, 439 F.3d 226 (5th Cir. 2006) (same); *People v. Sherrick*, 19 Cal. App. 4th 657, 659, 24 Cal. Rptr. 2d 25 (1993) (defendant's general waiver of right to appeal, part of negotiated plea agreement, does not bar appeal of sentencing errors occurring after plea).

As the district court suggested in this case, it is not too onerous a burden to require the State to be explicit about the terms it requires in plea agreements. The State was not explicit about a waiver of appeal of sentence in this case. The agreement's general waiver language is, at best, ambiguous about the availability of any appeal of the sentences yet to come. We have previously stated: "Where a statute is ambiguous, we require that it be strictly construed in favor of the accused. [Citation omitted.] We find no compelling reason to adopt a different rule in interpreting ambiguous plea agreements." *State v. Wills*, 244 Kan. 62, 69, 765 P.2d 1114 (1988); see also *United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) (court will not enforce waivers of appellate rights beyond scope of plea agreement; "[l]ike most waivers, a defendant's waiver of his right to appeal . . . is to be construed narrowly"); *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003)

(in determining waiver's scope, "any ambiguities in . . . agreements will be read against the Government and in favor of a defendant's appellate rights").

*Conclusion*

Because Patton qualifies for application of the third *Ortiz* exception—he was furnished an attorney who failed to perfect his direct appeal—and because the waiver in his plea agreement did not address appeals from sentencing, the Court of Appeals erred in dismissing his late appeal.

The judgment of the district court allowing defendant's late appeal is therefore affirmed. The decision of the Court of Appeals dismissing defendant's late appeal is reversed; and the case is remanded to the Court of Appeals for further proceedings consistent with the opinion of this court.

NUSS, J., not participating.

BUSER, J., assigned.