No. 118,790

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of J.S.P.

SYLLABUS BY THE COURT

1.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited.

2.

The right to appeal is entirely statutory, and an appeal may be entertained only if it is taken in the manner prescribed by statute.

3.

In an extended jurisdiction juvenile prosecution, when an offender violates his or her conditional release, K.S.A. 2018 Supp. 38-2364 authorizes a court to revoke the juvenile sentence and order the imposition of the stayed adult sentence.

4.

Kansas statutes do not provide a juvenile offender with a right to appeal an order revoking the juvenile sentence and ordering imposition of the stayed adult sentence in an extended jurisdiction juvenile prosecution.

5.

Absent an ambiguity in a statute, the plain meaning of the words chosen by the Legislature will control and courts will not add words to the law.

1

6.

Although juvenile offenders are entitled to similar constitutional protections as adults, they are not guaranteed the same statutory rights as adults unless specifically provided for in the revised Juvenile Justice Code.

7.

When a lack of jurisdiction is shown, the appellate court must dismiss the appeal.

Appeal from Wyandotte District Court; DELIA M. YORK, judge. Opinion filed March 15, 2019. Appeal dismissed.

*Michael C. Duma*, of Duma Law Offices LLC, of Olathe, for appellant.

*Sheri L. Courtney*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and SCHROEDER, JJ.

GARDNER, J.: J.S.P. appeals the imposition of his adult prison sentence after the district court found he had violated the terms of conditional release on his juvenile sentence. He raises three arguments: (1) He was denied due process because his conditional release contracts failed to advise him a violation could lead to imposition of his stayed adult sentence; (2) insufficient evidence showed he violated the terms of his conditional release; and (3) imposing his adult sentence constitutes cruel and unusual punishment under both the state and federal Constitutions. The State argues that this court lacks jurisdiction to review the merits of J.S.P.'s claims. Agreeing with the State, we dismiss this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

J.S.P. pleaded no contest to two counts of criminal discharge of a firearm at an occupied vehicle, two counts of aggravated assault, and one count of aggravated battery. Those crimes occurred in December 2010 when J.S.P was 14 years old. The victim of one of J.S.P.'s crimes was left paralyzed, but the facts of J.S.P.'s underlying crimes are not relevant here.

J.S.P. was sentenced in an extended juvenile jurisdiction proceeding (EJJP). In such a proceeding, a juvenile is given both a juvenile sentence and an adult sentence. The adult sentence is stayed pending successful completion of the juvenile sentence. If the juvenile either violates the terms of his juvenile sentence or commits a new offense, the adult sentence may be imposed in some circumstances. It was imposed here. J.S.P. agreed to an aggravated sentence of 72 months in the Kansas Juvenile Correctional Facility (JCF) in exchange for the State's promise that it would not seek adult prosecution. The district court sentenced J.S.P. to 72 months in JCF followed by 24 months of conditional release and a stayed adult sentence of 237 months in prison.

When the district court sentenced J.S.P. in 2011, the court, J.S.P.'s attorney, and the prosecuting attorney advised him repeatedly about the adult sentence he could be facing. Defense counsel stated that she had "explained to [J.S.P.] that if he does not follow the juvenile program in JCF and afterwards that he could serve around 19.75 years as opposed to the six years which we're asking the court to sentence him here today." The prosecutor stated: "If he does comply with all the terms, then he'll never have to serve that EJJP sentence. However, it will be hanging over his head the entire time and could be imposed for something as little as being suspended from school or smoking marijuana."

The court warned J.S.P., saying:

"[V]ery importantly, the law is very strict. A violation of probation—like—like the attorney said, let's say you get out and you're on probation, conditional release, and you skip school, simple as that, smoke marijuana, simple as that. The law says that this court shall revoke your juvenile case and shall order you to go to the adult Department of Corrections. It doesn't say I may, doesn't say I can, it says if there is a violation that's shown, whether it's simple or not, it says the court shall revoke your juvenile sentence and you shall go to the correctional facility. I just want you to know how important it is that this is hanging over your head, and it's a heck of a hammer, okay.

. . . .

". . . In other words, you cannot possess or consume alcohol or drugs. You will have to provide breath tests, blood tests and/or UA's. And as I indicated, a dirty UA is going to have a tremendous effect on what happens to you so make sure it's not.

. . . .

". . . So just to make sure everybody understands, he's facing two different things: One, the one that's applying right now. 72 months minus what he's already been in jail for. That's all he'll have to do as long as he does well and doesn't get in trouble. But if he gets in basically any trouble—it's almost any trouble—he's looking at twice, more than his age, 19 plus years. So for your hope and your sake, and I mean this, I hope you don't. I don't look at anybody age 14 and wish they were going for 19 and three-quarter years, but the court can also—cannot look away from the crimes involved."

J.S.P. completed his time in JCF. Just before J.S.P.'s term of conditional release began, he signed three documents acknowledging the conditions of his release and potential consequences for violating them. The first was the Unified Government's Department of Community Corrections Supervision Conditions (UG contract).

That contract notified J.S.P. of the conditions of his release and any potential punishments. Among its required conditions were:

4

- "obey all laws and . . . report any contacts with law enforcement officers
  . . . the following working day";
- "refrain from the purchase, possession or consumption of drugs (to include
  'bath salts' and incense such as 'K-2' and other legally or illegally sold
  synthetic stimulants) and alcohol and refrain from presence at any location
  where alcohol and illegal drugs are located";
- "submit to random urine (UA) and breath analysis (BA) tests at the request
  of [his] probation officer";
- "complete a substance abuse evaluation within 2-4 weeks as directed by
  [his] probation officer" if J.S.P. tested positive for drugs;
- refrain from possessing or being around weapons or ammunition or those
  who possess such items; and
- not participate in "any gang-related activity or associate with known gang
  members."

But this UG contract did not advise J.S.P. that the court could impose the stayed 237-month prison term if he violated his conditional release. Instead, it stated that a non-compliant juvenile could be subject to internal sanctions or could be returned to court on a violation of supervision. It then stated:

> "If a juvenile is returned to Court on a violation of supervision, the Judge may:
> 1. Re-sentence the juvenile to a new disposition (Juvenile Justice Authority
>    Custody, Juvenile Intensive Supervision, or a Commitment to the Juvenile
>    Correctional Facility.)
> 2. Impose one or more of a combination of sanctions such as: house arrest,
>    detention, community service work, extending time on supervision etc."

The UG contract mentioned no other options, such as revoking J.S.P.'s conditional release and imposing his stayed adult sentence.

5

In fact, the UG contract suggested that the consequences for J.S.P.'s violation of the conditions were exclusively those "listed above." Above J.S.P.'s signature on the contract were these warnings:

> "**I understand that if I violate the conditions I may be taken into custody by police** and detained at least until such time as the Court conducts a detention hearing."
>
> . . . .
>
> "I ALSO HAVE READ AND UNDERSTAND THE POSSIBLE RANGE OF CONSEQUENCES FOR NOT OBEYING THESE CONDITIONS THAT CAN BE IMPOSED BY MY OFFICER OR BY THE JUDGE AS LISTED ABOVE."

J.S.P. signed two other similar documents: (1) a conditional release contract with the State of Kansas Department of Corrections (KDOC contract); and (2) a Juvenile Intensive Supervision Contract with the Johnson County Department of Corrections (JCDC). Both prescribed certain conditions of J.S.P.'s release but neither referred to his stayed adult sentence or explained when it could be imposed. Instead, his KDOC contract stated:

> "Any violation of the Conditional Release Contract is a violation of State Law (K.S.A. 38-2375) and may result in court action to extend the terms of your Release Contract and/or to modify the conditions of your Conditional Release Contract, or to return you to the Juvenile Correctional Facility."

Similarly, his JCDC contract stated:

> ". . . The Respondent may be placed in confinement at the Juvenile Detention Center (or Adult Detention Center if over the age of 18), placed on House Arrest, placed in the Evening Reporting Center (ERC) or directed to appear before the Review Board, if

6

he/she does not comply with the Supervision Contract, Case Supervision Plan, Probation Plan and/or Conditional Release Contract."

J.S.P. began serving his 24-month conditional release in July 2015. One week before his conditional release was to expire, the State moved to revoke J.S.P.'s juvenile sentence and to impose his adult sentence. The State argued that J.S.P. had violated his conditional release by several acts:  testing positive for marijuana in November 2015; failing to get a substance abuse treatment evaluation within two to four weeks thereafter; being in a car on January 7, 2016, with marijuana, firearms, and two known gang members; and failing to notify his probation officer that he had had "negative law enforcement contact."

The district court granted the State's motion to revoke J.S.P.'s conditional release and ordered the imposition of J.S.P.'s adult sentence. After J.S.P.'s arrest he requested and received an evidentiary hearing on the matter.

After the April 2016 hearing, the district court found J.S.P. had violated the conditions of his conditional release so it revoked his juvenile sentence and imposed his adult sentence—a 237-month prison term. J.S.P. appeals the revocation of his juvenile sentence and the imposition of his adult sentence under K.S.A. 2015 Supp. 38-2364. His three juvenile cases were consolidated for purposes of this appeal.

DO WE HAVE JURISDICTION OVER THIS APPEAL?

Before we reach the issues J.S.P. has raised on appeal, we must address the State's argument that J.S.P. lacks statutory authority to appeal the revocation of his juvenile sentence and the imposition of his adult sentence. J.S.P. has not responded to that argument.

7

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). If the district court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004).

The right to appeal is purely statutory and not a right contained in the United States or Kansas Constitutions. *State v. Ehrlich*, 286 Kan. 923, Syl. ¶ 2, 189 P.3d 491 (2008). Jurisdiction in any action on appeal depends on strict compliance with the statutes. *State v. Boyd*, 268 Kan. 600, 607, 999 P.2d 265 (2000). Thus, subject to some exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appellant takes the appeal in the manner prescribed by statutes. *Smith*, 304 Kan. at 919.

In an EJJP, a juvenile violates the provisions of his or her juvenile sentence by violating the terms of conditional release. *In re A.D.T.*, 306 Kan. 545, Syl. ¶ 3, 394 P.3d 1170 (2017). The consequences of a juvenile violating the provisions of his or her conditional release in an EJJP are set forth in K.S.A. 2018 Supp. 38-2364:

> "(a) If an extended jurisdiction juvenile prosecution results in a guilty plea or finding of guilt, the court shall:
> (1) Impose one or more juvenile sentences under K.S.A. 2018 Supp. 38-2361, and amendments thereto; and
> (2) impose an adult criminal sentence, the execution of which shall be stayed on the condition that the juvenile offender substantially comply with the provisions of the juvenile sentence and not commit a new offense.
> "(b) When it appears that a person sentenced as an extended jurisdiction juvenile has violated one or more conditions of the juvenile sentence or is alleged to have committed a new offense . . . . The court shall hold a hearing on the issue at which the juvenile offender is entitled to be heard and represented by counsel. After the hearing, if the court finds by a preponderance of the evidence that the juvenile committed a new offense or violated one or more conditions of the juvenile's sentence, *the court shall*

8

*revoke the juvenile sentence and order the imposition of the adult sentence previously ordered pursuant to subsection (a)(2)* or, upon agreement of the county or district attorney and the juvenile offender's attorney of record, the court may modify the adult sentence previously ordered pursuant to subsection (a)(2). Upon such finding, the juvenile's extended jurisdiction status is terminated, and juvenile court jurisdiction is terminated. The ongoing jurisdiction for any adult sanction, other than the commitment to the department of corrections, is with the adult court. The juvenile offender shall be credited for time served in a juvenile correctional or detention facility on the juvenile sentence as service on any authorized adult sanction." (Emphasis added.) K.S.A. 2018 Supp. 38-2364.

The district court revoked J.S.P.'s juvenile sentence and imposed his stayed adult sentence under this statute. But this statute does not provide a juvenile offender a right to appeal from that order.

The only statute authorizing an appeal from juvenile proceedings is K.S.A. 2018 Supp. 38-2380. Subsection (a) of that statute authorizes some appeals from an order authorizing prosecution as an adult or EJJP:  "(a) Unless the juvenile offender has consented to the order, a juvenile offender may take an appeal from an order authorizing prosecution as an adult." K.S.A. 2018 Supp. 38-2380(a)(1). But that provision merely permits a juvenile referred for criminal prosecution as an adult to challenge the referral. J.S.P. was not prosecuted as an adult, although he was eventually sentenced as one. This statute does not permit a juvenile such as J.S.P., who has had his EJJP conditional release revoked, to appeal the imposition of his stayed adult sentence. Neither party contends this subsection applies.

Instead, the State focuses on subsection (b) of this statute, which provides that a juvenile offender can appeal from an order of adjudication or sentencing or both:  "The juvenile offender may appeal from an order of adjudication or sentencing, or both. The appeal shall be pursuant to K.S.A. 2018 Supp. 38-2382, and amendments thereto." K.S.A.

9

2018 Supp. 38-2380(b). But an appellate court cannot review "(A) Any sentence that is within the presumptive sentence for the crime; or (B) any sentence resulting from an agreement between the state and the juvenile which the sentencing court approves on the record." K.S.A. 2018 Supp. 38-2380(b)(2)(A)-(B).

K.S.A. 2018 Supp. 38-2382 adds nothing to our analysis, as it merely provides general procedures for juvenile appeals, such as which court to appeal to and when. Neither party invokes either exception for presumptive or agreed sentences. The State mentions that "J.S.P. consented to the order authorizing EJJP," but it does not argue that any statutory provision based on consent or agreement, such as 38-2380(b)(2)(B) above, bars J.S.P's appeal. Thus, the State has abandoned any such argument. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (finding point raised incidentally in brief and not argued is abandoned).

Instead, the State argues only that no statutory authority permits an appeal here. Because 38-2380(b)(2)(B) permits a juvenile offender to appeal only from "an order of adjudication or sentencing, or both" it does not permit an appeal from a revocation of a juvenile's conditional release and the resulting imposition of a stayed adult sentence.

Based on the plain language of the statute, we agree. We are mindful of the Kansas Supreme Court's emphasis on the court's duty to give effect to the plain language of a statute. Absent an ambiguity, the plain meaning of the words chosen by the Legislature will control and courts will not add words to the law. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016); *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 367, 361 P.3d 504 (2015) (finding "the court's duty to give effect to the plain language of an unambiguous statute is not diluted just because that effect renders the statute unconstitutional"). J.S.P.'s sentencing occurred when the district court sentenced him in 2011 to 72 months in JCF followed by 24 months of conditional release and a stayed adult sentence of 237 months in prison. See *State v. Howard*, 287 Kan. 686, 692, 198

10

P.3d 146 (2008) (finding sentencing occurs when the court pronounces the sentence from the bench). J.S.P.'s sentencing did not occur when the district court later revoked J.S.P.'s conditional release and ordered the imposition of his stayed adult sentence.

We have previously found that "nothing in the plain language of K.S.A. 2014 Supp. 38-2380(b) authorizes appellate jurisdiction for appeals from probation revocations." *In re C.D.A.-C.*, 51 Kan. App. 2d 1007, 1011, 360 P.3d 443 (2015). We find that case to be well reasoned. There, in a non-EJJP, we dismissed the appeal for lack of jurisdiction based on our holding that the revised Juvenile Justice Code does not authorize appeals from district court orders revoking probation. Similarly, in an EJJP, we found we lacked the statutory authority to consider an appeal of the juvenile court's order because there was no express statutory authority for it. *In re Todd*, No. 110,958, 2014 WL 7152357, at *2-3 (Kan. App. 2014) (unpublished opinion). Todd, 19 years after his plea, had filed a motion in the juvenile court to arrest judgment, arguing the juvenile court had lacked subject matter jurisdiction over him due to a defective complaint. We dismissed the appeal for lack of jurisdiction, finding the appeal was from the juvenile court's denial of a motion for arrest of judgment, not from an order of adjudication or sentencing. 2014 WL 7152357, at *2-3. The statute, then as now, permitted only the latter.

The Kansas Supreme Court has not addressed a juvenile's right to appeal from the imposition of an EJJP stayed adult sentence. It has, however, found no appellate jurisdiction for a juvenile offender's attempt to appeal an adverse ruling in a post-adjudication motion to set aside adjudication and sentence. See *In re D.M.-T.*, 292 Kan. 31, 35, 249 P.3d 418 (2011) (finding the revised Juvenile Justice Code contains no explicit authority for a juvenile to appeal an adverse ruling on such a motion). There, the Supreme Court rejected the juvenile's argument that he should be entitled to the same statutory procedures afforded adult criminal defendants and found that "juvenile procedures are not required to parallel adult criminal procedures." 292 Kan. at 35.

Adult offender appeals have a different, broader jurisdictional basis.

> "In adult offender appeals, K.S.A. 2014 Supp. 22-3601(a) grants jurisdiction to the appellate courts for any appeal taken from a district court's final judgment in a criminal case. This broad definition covers more than just adjudications and sentences as provided by the [revised] Juvenile Justice Code, and an adult offender may therefore appeal from a probation revocation as it is a final judgment. See *State v. Legero*, 278 Kan. 109, 117, 91 P.3d 1216 (2004)." *In re C.D.A.-C.*, 51 Kan. App. 2d at 1011.

Although juvenile offenders are entitled to similar constitutional protections as adults, they are not guaranteed the same statutory rights as adults unless specifically provided for in the revised Juvenile Justice Code. *In re P.R.G.,* 45 Kan. App. 2d 73, 81, 244 P.3d 279 (2010). See *In re D.M.-T.,* 292 Kan. at 35.

The plain language of K.S.A. 2018 Supp. 38-2380 and caselaw applying it show we lack jurisdiction to consider J.S.P.'s appeal from the revocation of his juvenile sentence and the imposition of his stayed adult sentence. The revised Juvenile Justice Code permits a juvenile offender to appeal only from "an order of adjudication or sentencing, or both." K.S.A. 2018 Supp. 38-2380(b). It does not provide for a right to appeal from a revocation of a juvenile's conditional release and the resulting imposition of the stayed adult sentence.

We note that our Supreme Court has recently and repeatedly reached the merits of similar EJJP cases in which juvenile offenders have appealed the revocation of their juvenile sentences and the imposition of stayed adult sentences after having been found guilty of violating conditional releases. The jurisdictional posture of these cases appears to be indistinguishable from the jurisdictional posture of this one. For example, in *In re A.D.T.*, 306 Kan. at 553-54, our Supreme Court found it was not manifestly unjust for the district court to impose an adult sentence for positive urinalysis tests even though the juvenile claimed he had not received the recommended substance abuse treatment while

12

in the juvenile correctional facility and had not received proper notice of what conduct would cause the court to invoke his adult sentence. In *In re E.J.D.*, 301 Kan. 790, 793-94, 348 P.3d 512 (2015), our Supreme Court found the EJJP statute required the district court to impose the adult sentence upon revocation of the juvenile sentence and permitted modification of the sentence only upon agreement of the county or district attorney and the juvenile offender's attorney. It also found the juvenile's misconduct by engaging in fights during detention that could be characterized as battery were new offenses supporting revocation of his juvenile sentence and the revocation of the stay of execution as to his adult sentence, even if the offenses were not formally charged. 301 Kan. at 794-96. Lastly, in *In re A.M.M.-H.*, 300 Kan. 532, 540, 331 P.3d 775 (2014), our Supreme Court found that the district judge retains discretion to determine whether a particular violation warrants revocation of the stayed adult sentence if the juvenile has not yet requested a hearing on the allegations of the violation.

None of those cases, however, addressed the court's jurisdiction to consider the revocation of the juvenile sentence and the imposition of the stayed adult sentence. Apparently, no one raised the issue. Although that court has a duty, as we do, to question jurisdiction on its own initiative and to dismiss when the record discloses a lack of jurisdiction, *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018), we rely instead on the plain language of the controlling statute. We dismiss this appeal for lack of jurisdiction.

Appeal dismissed.