IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,790

In the Matter of J.P.

SYLLABUS BY THE COURT

In an extended-jurisdiction juvenile proceeding, the district court gives a juvenile offender both a juvenile sentence and an adult sentence. The adult sentence is stayed on the condition that the juvenile substantially comply with the terms of the juvenile sentence and not commit a new offense. But if one of those conditions is violated, the district court must impose the adult sentence. When it does so, the court's order imposing the adult sentence is a final judgment appealable under K.S.A. 2019 Supp. 38-2347(e)(4) and K.S.A. 2019 Supp. 22-3602(a).

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 837, 439 P.3d 344 (2019). Appeal from Wyandotte District Court; DELIA M. YORK, judge. Opinion filed June 26, 2020. Judgment of the Court of Appeals dismissing the appeal is reversed, and the case is remanded to the Court of Appeals with directions.

*Michael C. Duma*, of Duma Law Offices, LLC, of Olathe, argued the cause and was on the briefs for appellant.

*Daniel G. Obermeier*, assistant district attorney, argued the cause, and *Sheri L. Courtney,* assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LEBEN, J.: When John P. was 14, the State filed charges against him for aggravated assault, aggravated battery, and criminal discharge of a firearm at an occupied vehicle. In a plea agreement, John agreed to plead no contest to the charges and to have an extended-jurisdiction juvenile prosecution. That allowed the district court to enter both a juvenile sentence (which can't run past age 23) and an adult sentence. The adult sentence would be stayed—and not served—on the condition that John substantially comply with the terms of the juvenile sentence and not commit a new offense.

John agreed to a longer juvenile sentence than would have been standard; under that agreement, the court sentenced him to 72 months in a juvenile-detention facility plus 24 months of conditional release. For the conditional-release part of his juvenile sentence, John would no longer be in the detention facility but would have to follow a variety of restrictions that would be set out for him. The parties had no agreement on the length of the adult sentence that would be entered; the court made it 237 months (or nearly 20 years) in prison.

When John was 18, he completed the 72-month sentence and began to serve the 24-month conditional-release period. As it started, the local area officials who would supervise him gave him a contract to sign. Called the Unified Government's Department of Community Corrections Supervision Conditions, that contract required that he obey all laws, promptly report all contacts with law-enforcement officers, refrain from having or using various drugs (including some that might be legal but were specifically listed), not participate in gang-related activity, and get a substance-abuse evaluation. That contract told John that if he violated the contract's terms, the court could resentence him to a new disposition (specifically listing going back to the juvenile correctional facility) or impose sanctions like house arrest, community service work, or extending the time on conditional release.

John also signed two other documents related to his release from detention—a conditional-release contract with the Kansas Department of Corrections and a Juvenile Intensive Supervision Contract with the Johnson County Department of Corrections. Both of those agreements also had terms John would need to follow while on conditional release, and both agreements said that violations of these contracts might result in extending the time for conditional release or sending him back to the juvenile correctional facility.

None of these conditional-release contracts mentioned that John's 237-month adult sentence might be imposed if he failed to comply with their terms. But John was told this orally by the court back when he was sentenced at age 14. The court then had told John:

> "[V]ery importantly, the law is very strict. A violation of probation—like—like the attorney said, let's say you get out and you're on probation, conditional release, and you skip school, simple as that, [or] smoke marijuana, simple as that. The law says that this court shall revoke your juvenile case and shall order you to go to the adult Department of Corrections. It doesn't say I may, doesn't say I can, it says if there is a violation that's shown, whether it's simple or not, it says the court shall revoke your juvenile sentence and you shall go to the correctional facility. I just want you to know how important it is that this is hanging over your head, and it's a heck of a hammer, okay."

Whether John remembered that when he went on conditional release we can't say. But the court had accurately told John what could happen. There was a "heck of a hammer" hanging over his head—one that the State could choose to use or choose to leave in reserve.

The conditional-release contracts let the State use lesser sanctions to try to gain John's compliance and improve his behavior if it chose to. But if the State chose instead to use any substantial violation of the conditional-release terms as the basis for revoking

3

the juvenile sentence and imposing the adult sentence, K.S.A. 2019 Supp. 38-2364(b) requires the court to do it. If the State alleges a violation and the court finds that the offender has "committed a new offense or violated one or more conditions . . . the court shall revoke the juvenile sentence and order the imposition of the adult sentence . . . ." K.S.A. 2019 Supp. 38-2364(b); see K.S.A. 2019 Supp. 38-2364(a)(2) (staying adult sentence on condition that "offender substantially comply" with juvenile sentence and "not commit a new offense"); *In re A.D.T.*, 306 Kan. 545, Syl. ¶ 5, 394 P.3d 1170 (2017).

John began serving the 24-month conditional release in July 2015. A week before the supervision would have ended, the State moved to revoke his juvenile sentence and impose the adult one. The State cited several alleged violations of conditional-release rules: testing positive for marijuana in November 2015; failing to get a substance-abuse evaluation within two to four weeks of a failed drug test; being in a car in January 2016 with known gang members, firearms, and marijuana; and failing to notify his probation officer of contact with law-enforcement personnel.

The district court found that John had violated the terms of conditional release and imposed the adult sentence. John then appealed to the Court of Appeals. He raised three claims: (1) that his due-process rights had been violated because the conditional release contracts mentioned only noncompliance penalties that were far short of imposition of his 237-month adult sentence; (2) that the State didn't present enough evidence to show he had violated the conditional release conditions; and (3) that the imposition of the lengthy adult sentence was unconstitutional as cruel and unusual punishment.

The State responded in two ways. Although its brief addressed the merits of those claims, the State first argued that no appellate court had jurisdiction over an appeal of the order imposing the adult sentence.

4

The State argued that K.S.A. 2019 Supp. 38-2380(b) allows a juvenile offender to appeal only two things—"an order of adjudication," which is the juvenile-offender equivalent of a finding of guilt in an adult proceeding, and "sentencing." Since both of those took place in 2011 (when John was 14) and an appeal must be filed with 30 days, appeal of the sentence imposed in 2011 would be untimely. See K.S.A. 2019 Supp. 38-2382(c); K.S.A. 2019 Supp. 60-2103(a). But this is not an appeal of the sentence, anyway: it's an appeal of the 2014 order *imposing* the sentence. Since K.S.A. 2019 Supp. 38-2380(b) doesn't authorize the appeal of a later order imposing the adult sentence in an extended-jurisdiction juvenile proceeding, the Court of Appeals held that it lacked jurisdiction and dismissed the appeal.

John then sought our review of the jurisdictional issue. In his petition for review, he cited a statutory basis for jurisdiction that he had not cited to the Court of Appeals, K.S.A. 2019 Supp. 38-2347(e)(4). It gives a juvenile "who is the subject of an extended jurisdiction juvenile prosecution . . . the right to a trial by jury, to the effective assistance of counsel and to all other rights of a defendant pursuant to the Kansas code of criminal procedure." John argued that this gave him the right to appeal the order imposing the adult sentence. We granted the petition for review to consider the issue.

Ordinarily, of course, we decline to review legal arguments not made to the Court of Appeals and first mentioned in a petition for review. Here the issue is jurisdiction, something we can review even if no party brings it up. *Williams v. Lawton*, 288 Kan. 768, 779, 207 P.3d 1027 (2009). And appellate jurisdiction is determined by statute. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). Even if the parties don't cite to all the potentially applicable statutes, they are still there, and we either have—or don't have—jurisdiction based on them. We will therefore consider the merits of John's argument.

5

The focus of our jurisdictional inquiry is K.S.A. 2019 Supp. 38-2347(e)(4). Because context is important, we will set it out in full; the key point is that a juvenile subject to extended-jurisdiction proceedings gets "all [the] rights of a defendant" under the Kansas Code of Criminal Procedure:

"A juvenile who is the subject of an extended jurisdiction juvenile prosecution shall have the right to a trial by jury, to the effective assistance of counsel and to all other rights of a defendant pursuant to the Kansas code of criminal procedure. Each court shall adopt local rules to establish the basic procedures for extended jurisdiction juvenile prosecution in such court's jurisdiction." K.S.A. 2019 Supp. 38-2347(e)(4).

Assuming for the moment that K.S.A. 2019 Supp. 38-2347(e)(4) applies here (we'll discuss a bit later some arguments the State makes about that), we must determine whether the Kansas Code of Criminal Procedure would provide the right to appeal this order.

The Code of Criminal Procedure gives a defendant the right to appeal from any adverse judgment: "Except as otherwise provided, an appeal to the appellate court having jurisdiction of the appeal may be taken by the defendant as a matter of right from any judgment against the defendant in the district court." K.S.A. 2019 Supp. 22-3602(a). An appeal from a "final judgment" is usually taken to the Court of Appeals, as John did. See K.S.A. 2019 Supp. 22-3601(a). The Code of Criminal Procedure doesn't define "judgment" or "final judgment," but it incorporates the statutes and rules governing civil appeals whenever nothing more specific is in the Code of Criminal Procedure. A civil provision, K.S.A. 2019 Supp. 60-254(a), tells us that a judgment is "the final determination of the parties' rights in an action."

Here, the district court order imposing John's 237-month adult sentence was a final judgment—no further order of the district court was needed; this order sent John off to

6

serve his adult prison sentence. So if John has "all [the] rights" an adult defendant would have, he would have the right to appeal this order.

The State makes several arguments, though, that K.S.A. 2019 Supp. 38-2347(e)(4) does not apply at all.

First, the State argues that interpreting K.S.A. 2019 Supp. 38-2347(e)(4) to provide jurisdiction here would make another provision in the Revised Juvenile Justice Code superfluous. That provision, K.S.A. 2019 Supp. 38-2380(a), lets a juvenile offender appeal "from the order authorizing prosecution pursuant to K.S.A. 38-2347," which is the provision setting up the extended-jurisdiction juvenile-prosecution process. If K.S.A. 2019 Supp. 38-2347(e)(4) would already provide that right to appeal, the State argues, K.S.A. 2019 Supp. 38-2380(a) would be redundant.

We do not find this argument persuasive. The Legislature sometimes does enact redundant provisions, and this might be a case in which that would make sense. The provision giving the juvenile offender in an extended-jurisdiction proceeding all the rights an adult defendant would have is a broad, general-purpose statement. The provision giving a specific right to appeal the order authorizing extended-jurisdiction proceedings is more narrowly tailored. That could be especially important to do if there is any possible reading in which the general-purpose statement might not cover the situation separately provided for in specific terms.

Here, we can think of two reasons that might be the case. One could argue that the order for extended-jurisdiction proceedings is just a nonfinal (or interlocutory) order. After all, it won't have any real impact on the juvenile offender unless the juvenile sentence is revoked and the adult sentence imposed, as happened to John. Normally, appellate courts don't hear appeals of interlocutory or nonfinal orders. See *State v. McGaugh III*, 56 Kan. App. 2d 286, Syl. ¶ 3, 427 P.3d 978 (2018). So the specific

7

provision in K.S.A. 2019 Supp. 38-2380(a) makes sure that a juvenile offender can challenge the order that puts what John's judge called the "heck of a hammer" of an adult sentence hanging over the juvenile offender's head. In addition, the general provision in K.S.A. 2019 Supp. 38-2347(e)(4) has an interesting ambiguity in it with regard to the special situation covered by K.S.A. 2019 Supp. 38-2380(a). That's because the juvenile offender only gets these extra rights of adult criminal defendants once he or she "is the subject of an extended jurisdiction juvenile prosecution." K.S.A. 2019 Supp. 38-2347(e)(4). *After* entry of the order for extended-jurisdiction proceedings, K.S.A. 2019 Supp. 38-2347(e)(4) clearly applies—the juvenile is by that time "the subject" of the extended-jurisdiction proceeding. But is the juvenile also "the subject" of it at the moment this order is entered? Maybe. Perhaps even probably so. But there's enough ambiguity to make it reasonable to make the point explicitly in K.S.A. 2019 Supp. 38-2347(e)(4).

Second, the State notes that K.S.A. 2019 Supp. 38-2347(e)(4) is in the part of the Revised Juvenile Justice Code that deals with trial rights, while K.S.A. 2019 Supp. 38-2380 specifically focuses on appellate rights. Based on its location in the Code, the State argues that K.S.A. 2019 Supp. 38-2347(e)(4) should not be applied to appellate rights at all. The State also argues that the rights specifically mentioned in K.S.A. 2019 Supp. 38-2347(e)(4)—"the right to a trial by jury [and] to the effective assistance of counsel"—are trial rights.

But location within the Code is at best a weak clue to the section's meaning. See *State v. Schuster*, 273 Kan. 989, 994, 46 P.3d 1140 (2002). If the Legislature wanted to generally provide the trial and appellate rights of an adult defendant to the juvenile offender subject to extended-jurisdiction proceedings, it had to put that provision somewhere. And while jury-trial rights are limited to the trial-court setting, the right to counsel in serious cases applies on appeal too. See K.S.A. 22-4503(a); *Kargus v. State*, 284 Kan. 908, Syl. ¶ 1, 169 P.3d 307 (2007).

8

Third, the State argues that K.S.A. 2019 Supp. 38-2380(a) is a specific statute targeted at appellate proceedings, while K.S.A. 2019 Supp. 38-2347 is a general statute setting out the overall process from start to finish for extended-jurisdiction juvenile proceedings. The State argues that the more specific statute should control over the more general one. See *State v. Toothman*, 310 Kan. 542, 547, 448 P.3d 1039 (2019). But that argument can be reversed: John argues that K.S.A. 2019 Supp. 38-2347(e)(4) is more specific because it directly addresses the rights of juvenile offenders in extended-jurisdiction proceedings. Neither argument is particularly persuasive here.

We conclude that the plain language of K.S.A. 2019 Supp. 38-2347(e)(4) gives a juvenile offender "who is the subject of an extended jurisdiction juvenile prosecution . . . all [the] rights" an adult defendant would have under the Code of Criminal Procedure. That includes the right to appeal an adverse judgment, and this order was an adverse judgment. So we have jurisdiction to consider the appeal.

Normally, the merits of an appeal like this would first be considered by the Court of Appeals. See K.S.A. 2019 Supp. 22-3601(a); K.S.A. 2019 Supp. 38-2382(b). It didn't do so after it found it lacked jurisdiction. Since we have determined that jurisdiction was proper and that court has not yet addressed the merits of the appeal, we return the case to the Court of Appeals for that purpose.

The judgment of the Court of Appeals dismissing the appeal is reversed, and the appeal is remanded to the Court of Appeals to consider its merits.

NUSS, C.J., not participating.

9

HENRY GREEN, JR., J., assigned.[1]

STEVE LEBEN, J., assigned.[2]

---

[1] **REPORTER'S NOTE:**  Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 118,790 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2] **REPORTER'S NOTE:**  Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 118,790 vice Chief Justice Nuss under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c).