IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,802

In the Matter of I.A.

SYLLABUS BY THE COURT

A juvenile offender has no statutory or constitutional right to have a district court judge inform him or her of a right to appeal. Thus, due process does not demand that appellate courts extend the deadline for a juvenile offender to file an appeal even if a judge did not mention the right to appeal when adjudicating or sentencing the juvenile.

Review of the judgment of the Court of Appeals in 57 Kan. App. 2d 145, 450 P.3d 347 (2019). Appeal from Johnson District Court; JOHN P. BENNETT, judge. Opinion filed July 23, 2021. Judgment of the Court of Appeals dismissing the appeal is affirmed.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, argued the cause and was on the briefs for appellant.

*Andrew J. Jennings*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, was with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.: About 19 years after a district court judge adjudicated I.A. as a juvenile offender and sentenced him, I.A. filed this appeal in which he challenges the validity of those proceedings. I.A. recognizes he needed to file a notice of appeal within 10 days of his sentencing and that appellate courts lack jurisdiction over untimely appeals. But he asserts due process and procedural fairness require us to hear his

1

out-of-time appeal. This assertion rests on the proposition that the judge should have informed him of his right to appeal. But no constitutional provision, statute, or decision of this court directs a judge to inform a juvenile offender of the right to appeal. Without a provision to enforce, I.A. must show that the lack of a procedural right to have a judge tell him of the statutory right to appeal offends a fundamental principle of justice—that is, a principle rooted in the traditions and conscience of Kansans. I.A. does not meet this burden, and we dismiss his appeal for lack of jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, I.A. and some friends randomly shot BB pellets at motorists. I.A. was 17 years old. The State charged I.A. as a juvenile with aggravated battery; the State later amended the complaint to add eight more charges. I.A. eventually agreed to plead guilty to two counts of reckless aggravated battery in exchange for the State's dismissal of the remaining charges.

At a plea hearing, the district court advised I.A. of his rights listed in K.S.A. 38-1633(b). That statute requires a district court to inform a juvenile of certain rights before accepting a plea, including the right to a trial, the right against compelled testimony, and potential sentences. See *In re B.S.*, 15 Kan. App. 2d 338, 339, 807 P.2d 692 (1991). The statute did not, however, require the district court to inform a juvenile of the right to appeal. The district court adjudicated I.A. as a juvenile offender, sentenced him to probation for a year, and ordered restitution. I.A. satisfied the conditions of his probation, and the district court granted his release from its jurisdiction in November 1999.

2

About 19 years after his sentencing, I.A. filed a pro se request to file a direct appeal out of time. He argued the district court did not tell him of his right to jury trial or obtain a knowing and voluntary waiver of his rights.

The Court of Appeals issued a show cause order directing the parties to explain why the appeal should not be dismissed for lack of jurisdiction because of the untimely notice of appeal. I.A., through court-appointed counsel, argued the judge had not informed I.A. of his right to appeal when it adjudicated him as a juvenile offender. He thus argues his appeal falls under the first exception allowing a late appeal recognized in *State v. Ortiz*, 230 Kan. 733, Syl. ¶ 3, 640 P.2d 1255 (1982). *Ortiz* held adult criminal defendants could file late appeals in three circumstances; we often call these circumstances the *Ortiz* exceptions. The second and third exceptions are rooted in the right to effective assistance of counsel. 230 Kan. 733, Syl. ¶ 3. I.A. did not base his arguments on either of those exceptions. Instead, he relies on the first exception. That exception rests on concepts of procedural due process arising from "[t]hree Kansas statutes [that] provide specific procedural safeguards of the right to appeal by certain criminal defendants." *State v. Patton*, 287 Kan. 200, 219, 195 P.3d 753 (2008). These statutes require district court judges to inform criminal defendants of their right to appeal and their right to have appointed counsel for an appeal. 287 Kan. at 219.

Because the first *Ortiz* exception applies only if a judge does not follow the directive of these statutes, I.A.'s argument depended on evidentiary proof that the judge had not announced his right to appeal. The Court of Appeals, which does not itself make factual findings, remanded I.A.'s claim to the district court for fact-finding. Back in district court, I.A. asked for a transcript of the plea and sentencing hearing. But the court could not produce a transcript. A court reporter explained that she made a good-faith effort to transcribe the 19-year-old audio cassette tapes used to record the plea hearing

3

but was unable to do so. The district court judge then conducted a hearing after which the judge made a factual finding that the judge adjudicating I.A. as a juvenile offender in 1998 had not advised him of his right to appeal.

With the factual question resolved, the Court of Appeals focused on the legal question of whether a juvenile offender has a right to have a judge announce the right to appeal during a plea or sentencing hearing. It held no such right existed and no other justification extended the deadline for I.A. to bring an appeal. The Court of Appeals thus held it did not have jurisdiction and dismissed the appeal. *In re I.A.*, 57 Kan. App. 2d 145, 153-54, 450 P.3d 347 (2019).

I.A. petitioned for our review of the dismissal. We granted review and now have jurisdiction to consider the legal question decided by the Court of Appeals. See K.S.A. 20-3018(b) (allowing petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (extending this court's jurisdiction to review Court of Appeals decisions upon granting petition for review). But we limit our review to that issue because we determine we lack jurisdiction to reach the issues at the heart of I.A.'s appeal—his attack on procedure that led to his adjudication as a juvenile offender.

ANALYSIS

Kansas appellate courts have a duty to question jurisdiction and, in doing so, conduct an unlimited review of any question of law underlying a jurisdiction inquiry. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609-10, 244 P.3d 642 (2010); *Patton*, 287 Kan. at 205. The Kansas Constitution informs us that this court has only "such appellate jurisdiction as may be provided by law." Kan. Const., art. 3, § 3.

We therefore must dismiss an appeal if the law does not grant jurisdiction. *Svaty*, 291 Kan. at 609-10; *Ortiz*, 230 Kan. at 735.

Looking at various sources of that law, the Kansas Constitution does not directly grant a right to appeal in any circumstance. *Svaty*, 291 Kan. at 609-10. "Likewise, the right to appeal a state criminal conviction is not a fundamental right guaranteed by the Constitution of the United States or a requisite of due process of law guaranteed to any person by the Fourteenth Amendment." *Ware v. State*, 198 Kan. 523, 525-26, 426 P.2d 78 (1967); see *McKane v. Durston*, 153 U.S. 684, 687-88, 14 S. Ct. 913, 915, 38 L. Ed. 867 (1894). Nor does the United States Constitution require states to grant juvenile offenders a right to appellate review. *In re Gault*, 387 U.S. 1, 58, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (citing *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S. Ct. 585, 100 L. Ed. 891 [1956]).

This means the right to appeal "is not an inherent, natural, inalienable, absolute or vested right." *Ware*, 198 Kan. at 525. Instead, the right to appeal "is a privilege, a matter of grace which the state can extend or withhold as it deems fit, or which may be granted on such terms and conditions it sees fit." 198 Kan. at 526; see *McKane*, 153 U.S. at 687-88; *Svaty*, 291 Kan. at 609-10.

Without a constitutional provision granting the right to appeal, appellate jurisdiction "is conferred by statute." *Ware*, 198 Kan. at 525. That means the person bringing an appeal—that is, the appellant—must satisfy "the terms provided by the statute" for the appellate court to obtain jurisdiction. 198 Kan. at 525. Statutes relating to the filing of an appeal, among other requirements, direct an appellant to file an appeal by a specified deadline; not doing so means appellate courts do not obtain jurisdiction. *Ortiz*, 230 Kan. at 735. I.A. does not dispute that his notice of appeal was filed about 19 years

5

after the deadline that applies to his appeal, which was 10 days after entry of sentence. K.S.A. 1998 Supp. 38-1681(b).

Given I.A.'s failure to comply with the statutory requirements under which appellate courts would have jurisdiction, he asks us to carve an alternative route, one not yet recognized for juvenile offenders. He contends we should indefinitely extend the filing deadline because no judge told him of his right to appeal. He rests his argument on procedural due process and fundamental fairness.

In considering this argument, we must first decide on the framework for our analysis. This court and the United States Supreme Court have applied two frameworks or tests—one in civil cases and another in criminal cases—when considering procedural due process. Here, the Court of Appeals used the framework set out by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), which is primarily applied in civil cases. See *Medina v. California*, 505 U.S. 437, 443, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). The *Mathews* framework requires a balancing of three factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Court of Appeals did not explain its rationale for applying this balancing test, and neither party discusses which framework should apply here.

6

The other framework applies mainly in criminal cases and was set out by the United States Supreme Court in *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). I.A.'s arguments suggest this test should apply here because he rests his argument on two criminal cases—*Ortiz*, 230 Kan. 733, and *Patton*, 287 Kan. 200. *Ortiz* did not explicitly apply *Patterson*, but this court later revisited *Ortiz* and, in doing so, applied *Patterson*. *Patton*, 287 Kan. at 220-21.

*Ortiz* considered a criminal defendant's argument that this court should hear his out-of-time appeal for reasons of fundamental fairness—he had limited understanding of English and said he did not understand his rights when he signed a waiver. The court disagreed, finding the record did not support his claims and there was no lack of fundamental fairness that would excuse hearing an untimely appeal. 230 Kan. at 736. *Ortiz*, however, recognized three circumstances in which an appellate court could consider an untimely appeal when a judge:  (1) did not inform a defendant of his or her right to appeal; (2) did not provide a defendant an attorney for his or her appeal; or (3) provided an attorney who failed to perfect the appeal. 230 Kan. at 736.

Revisiting this holding in *Patton*, the court took a more in-depth look at the *Ortiz* exceptions. *Patton* said the first *Ortiz* exception hinged on a criminal defendant's right to procedural due process. 287 Kan. at 218-19. Then, *Patton* explored the doctrinal basis for *Ortiz*' holding. In doing so, *Patton* held the analytical approach set out in *Patterson* governed. *Patton* reached this conclusion after discussing *Medina*, 505 U.S. at 443, which held the balancing test in *Mathews* was not the correct framework for assessing the validity of state procedural rules in criminal cases. *Patton*, 287 Kan. at 220.

In *Medina*, the United States Supreme Court explained:  "In the field of criminal law, we 'have defined the category of infractions that violate "fundamental fairness" very

7

narrowly' based on the recognition that, '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" 505 U.S. at 443 (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 [1990]). The Court expressed concern that "the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order." 505 U.S. at 443. The *Patterson* approach balanced these concerns, according to the *Medina* Court. 505 U.S. at 444-46.

The *Patterson* framework recognizes that a state has the right to define its criminal procedures and that state-specific rules of criminal procedure do not violate the Due Process Clause unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 201-02. The *Medina* Court reiterated the appropriateness of this test. It directed courts to apply it when examining criminal procedural rules and to refrain from becoming "'a rule-making organ for the promulgation of state rules of criminal procedure.'" *Medina*, 505 U.S. at 443-44 (quoting *Spencer v. Texas*, 385 U.S. 554, 564, 87 S. Ct. 648, 17 L. Ed. 2d 606 [1967]).

Considering whether to apply this guidance here, we recognize that *Patterson* and *Medina* partially stem from concepts of federalism and states' rights—concepts relevant in those cases because federal courts were reviewing state judgments. Here, we do not have that circumstance. Yet the core test of *Patterson* applies to any court—federal or state—considering a due process claim under the Fourteenth Amendment. That core test rests on the precepts of separation of powers and judicial restraint. First, courts avoid "undue interference with . . . considered legislative judgments." *Medina*, 505 U.S. at 443. Second, courts respect the people's judgment about which rights are a "principle of justice

8

so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 201-02. Application of these principles depends not on the circumstance that a federal court is reviewing a state procedure but on recognition of the role of all courts. And the separation of powers constraint applies no matter if we review proceedings under the revised juvenile justice code or the criminal code. This consideration supports applying *Patterson* here.

Another factor supporting applying *Patterson* today arises from the history of our doing so in *Patton*, 287 Kan. at 220.

On the other hand, unlike the defendants in *Ortiz* and *Patton*, I.A. did not stand before the district court as an adult criminal defendant but as a juvenile offender. And we have not explicitly decided whether the *Patterson* or the *Mathews* framework applies in juvenile offender cases. Although not made here, we can foresee arguments about why *Mathews* should apply, at least in some cases or as to some issues. After all, the Kansas Rules of Civil Procedure govern juvenile appeals. See K.S.A. 1998 Supp. 38-1683(b).

Even so, I.A. argues the juvenile justice system in Kansas mirrors the characteristics of criminal proceedings and juvenile offenders should thus benefit from *Ortiz*. He also urges us to consider juvenile offender cases that, while predating or not citing *Patterson*, reflect its framework: *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *In re Gault*, 387 U.S. 1; and *In re L.M.*, 286 Kan. 460, 186 P.3d 164 (2008). These cases extend various rights recognized in the Bill of Rights to juveniles.

*In re Winship*, 397 U.S. at 367, held constitutional due process rights under the Fourteenth Amendment include the requirement of proof of guilt beyond a reasonable

9

doubt and apply to juveniles. And *In re Gault* held the Constitution protects various due process rights of juveniles under the Fourteenth Amendment, including the rights to notice of charges, to counsel, and to confront witnesses. 387 U.S. at 32-33, 41, 57. Neither of these cases said anything about the right to have a judge inform a juvenile of the right to appeal, however. Indeed, as we earlier noted, *In re Gault* reiterated that the United States Constitution does not require states to grant a right to appellate review, let alone a right to have a judge inform the juvenile of appellate rights. *In re Gault*, 387 U.S. at 58. Salient to our point about *Patterson*, both *In re Gault* and *In re Winship* applied rights recognized by the people as core fundamental rights included in our Constitutions. They thus conform to the *Patterson* framework.

So too did *In re L.M.*, 286 Kan. 460. There, we held juveniles have a right to a jury trial under the Sixth Amendment to the United States Constitution. As I.A. points out, we did so because "the Kansas juvenile justice system has become more akin to an adult criminal prosecution." *In re L.M.*, 286 Kan. at 470. Our determination that the Sixth Amendment guaranteed juveniles a right to a jury trial equated in the words of *Patterson* to a determination that the right was "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 201-02.

Given the authorities cited by I.A. and the doctrinal applicability of the *Patterson* framework to the issue I.A. presents, we apply *Patterson*'s test today and consider whether notifying a juvenile offender of his or her right to appeal is so rooted in the traditions and conscience of our people that it is properly deemed a fundamental right.

Under that test, I.A.'s argument fails. Unlike *In re Gault*, *In re Winship*, and *In re L.M.* where the Bill of Rights included the protected rights, we would have to go beyond the Bill of Rights to grant I.A. the right to have a judge tell him he could appeal. No such

10

procedural right is found in either the United States or the Kansas Constitutions. In fact, as we have discussed, the right to appeal cannot be found in either.

Nor does I.A. point us to a statute that grants him a procedural right to have the judge inform him of his right to appeal. This point distinguishes his case from *Ortiz* and *Patton*. In *Patton*, this court emphasized that *Ortiz* "did not endow criminal defendants with any additional constitutional rights. It did not impose affirmative duties on counsel or the court. It did not set up new requirements that must be met to prevent a late appeal. Arguments based on any of these approaches twist its intention and application." 287 Kan. at 217. Instead, *Ortiz*' first exception arises "if a district judge fails to abide by one of [three] statutes": K.S.A. 22-3210(a)(2), K.S.A. 22-3424(f), and K.S.A. 22-4505. 287 Kan. at 220. These statutes require a judge to inform a criminal defendant that "(1) a right to appeal the severity level of the sentence exists; (2) any such appeal must be taken within 10 days . . . ; and (3) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal." 287 Kan. at 220. These statutes are part of the criminal code of procedure.

Kansas statutes included no corresponding statutes in the Kansas Juvenile Offenders Code in effect in 1998 when I.A. was in court. K.S.A. 1998 Supp. 38-1633(b) list points a court had to review with a juvenile before accepting a plea. These included the right to trial, the right to subpoena witnesses, the right to testify or decline to testify, among others. The statute did not, however, require a court to inform a juvenile of their right to appeal. Once the judge informed the juvenile of these rights, K.S.A. 1998 Supp. 38-1633(c) required a court to decide whether a juvenile voluntarily waived the rights before accepting a guilty plea. But, like subsection (b), subsection (c) did not reference a need to discuss or make findings about the juvenile's right to appeal.

11

We would thus have to become "'a rule-making organ for the promulgation of'" rules of juvenile offender procedure if we grant I.A. a right to appeal out of time. *Medina*, 505 U.S. at 443-44 (quoting *Spencer*, 385 U.S. at 564). *Medina* and *Patterson* make clear courts should not create a procedure in the name of due process. Rather, due process requires courts to enforce rights granted by statute and to remedy statutory violations. And *Patton*, 287 Kan. at 217, stressed that all this court did in *Ortiz* and *Patton* was enforce a statutory provision; it created no new requirement for judges. I.A.'s argument cannot follow the same path to a remedy because the revised juvenile justice code includes no comparable statutory provision directing judges to inform offenders of the right to appeal.

Consistent with this conclusion, this court declined to extend *Ortiz* to appeals from K.S.A. 60-1507 motions in *Albright v. State*, 292 Kan. 193, 251 P.3d 52 (2011), and *Guillory v. State*, 285 Kan. 223, 170 P.3d 403 (2007). In both cases the court distinguished *Ortiz* because no statute required a judge to notify a movant of the right to appeal. *Albright*, 292 Kan. at 202; *Guillory*, 285 Kan. at 228. Likewise, in *State v. Shelly*, 303 Kan. 1027, 1039, 371 P.3d 820 (2016), the court held that *Ortiz* and *Patton* did not require a court to inform a defendant of his right to appeal the severity level of his crime because no statute required a court to do so. And in *State v. Hemphill*, 286 Kan. 583, 591, 186 P.3d 777 (2008), the court held that the first *Ortiz* exception did not apply to an untimely motion to withdraw a plea because there was no statutory obligation for the district court to inform the defendant of his right to appeal the denial of his motion.

In the rare times a court has expanded *Ortiz* beyond criminal proceedings, it has found that a statutory or constitutional right had been denied. In *Brown v. State*, 278 Kan. 481, 101 P.3d 1201 (2004), a movant filed an out-of-time appeal of the dismissal of his K.S.A. 60-1507 motion because he did not know the judge had appointed counsel, held a

hearing, or dismissed his motion. This court said that because a statute granted a right to counsel, the movant necessarily had a statutory right to effective counsel, which had been denied, and the right to effective assistance of counsel is a fundamental right guaranteed in the Bill of Rights. The defendant was thus entitled to take an out-of-time appeal under the second and third *Ortiz* exceptions. 278 Kan. at 484-85. Likewise, while in *Albright* we reaffirmed that a movant under K.S.A. 60-1507 could not invoke *Ortiz*' first exception because no statute directed a court to inform the movant of a right to appeal, the movant had a right to effective assistance of counsel and could invoke *Ortiz*' second and third exceptions. *Albright*, 292 Kan. at 202. *Albright* and *Brown* do not aid I.A., who does not raise those exceptions.

In sum, without specific statutory directives that require a court to inform a juvenile offender of the right to appeal, *Ortiz*' first exception does not apply.

But I.A. also argues that independent of a statutory obligation to inform him of his right to appeal, the concept of fundamental fairness requires us to create a new exception. In doing so, he highlights the parallels between juvenile and criminal prosecutions, the punitive aspects of juvenile proceedings, and general principles of fundamental fairness. He contends that if judges must inform adult criminal defendants of the right to appeal, they should inform juveniles who usually have less knowledge and judgment than that of an adult offender.

I.A. ventures into yet unplowed ground. To date, we have recognized the right to appeal in juvenile cases only when a statute allowed the appeal. For example, we recently recognized an appellate court's jurisdiction over an appeal of a juvenile who was subject to an extended jurisdiction juvenile prosecution. *In re J.P.*, 311 Kan. 685, 466 P.3d 454 (2020). There, a juvenile who was subject to an extended jurisdiction juvenile

13

prosecution appealed revocation of his juvenile sentence and imposition of the adult sentence following violations of the conditions of his release. The State argued that because K.S.A. 2020 Supp. 38-2380(b), which describes orders appealable by a juvenile, does not mention the later imposition of an adult sentence in an extended jurisdiction juvenile proceeding, the appellate court did not have jurisdiction to consider the appeal. This court held that the appellate court had jurisdiction under K.S.A. 2020 Supp. 38-2347(e)(4), which grants juveniles who are subject to extended jurisdiction juvenile prosecutions "all other rights of a defendant pursuant to the Kansas code of criminal procedure." 311 Kan. at 688. No comparable statute applies here.

*In re J.P* is again consistent with the *Patterson* test. Like our other decisions cited by I.A. it enforces a right granted by statute and no more. None of the holdings that we have discussed resulted from this court engaging in rulemaking. See *Medina*, 505 U.S. at 443-44. And while I.A. contends we must do so to protect his rights, he does not meet the *Patterson* test because he does not point to "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 201-02. No case he cites suggests that even the right to appeal is fundamental, much less the right to have a judge announce that right to appeal in open court. I.A.'s underlying contention relates to a lack of fairness; he suggests it makes no sense that judges must inform criminal defendants of the right to appeal while no statute tells judges to give the same information to a juvenile offender. In making this argument, he presents a policy decision for the Legislature.

On a final note, if we were to apply *Mathews*, we would agree with the Court of Appeals' analysis.

14

In sum, we hold that Kansas appellate courts lack jurisdiction to hear an appeal if a juvenile offender did not follow statutory directives and due process does not require us to make an exception. A juvenile offender has no statutory or constitutional right to have a district court judge inform him or her of a right to appeal. Thus, due process does not demand that appellate courts extend the deadline for a juvenile offender to file an appeal even if a judge did not mention the right to appeal when adjudicating or sentencing the juvenile.

This means the Court of Appeals did not err in dismissing I.A.'s appeal for lack of jurisdiction. We affirm its holding and dismiss this appeal.

C. WILLIAM OSSMANN, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Ossmann was appointed to hear case No. 118,802 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Carol A. Beier.