NOT DESIGNATED FOR PUBLICATION

No. 123,218

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

SAAD ZAFAR JANJUA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES E. PHELAN, magistrate judge. Opinion filed September 10, 2021. Reversed and remanded.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Christopher M. Brennan*, of Overland Park, for appellee.

Before GREEN, P.J., ISHERWOOD, J., and MCANANY, S.J.

PER CURIAM: This appeal involves a one-year diversion agreement that Saad Zafar Janjua entered into with the State relating to charges against him for domestic battery and child endangerment. After the agreement had been in effect for nine months, and over the State's objection, the court terminated the diversion agreement and dismissed the case. The State appealed, contending that the court did not have jurisdiction to order the early termination of the parties' diversion agreement. Janjua counters that the issue is now moot. We conclude that the issue is not moot and the district court had no authority under the circumstances of this case to rewrite the clear and unambiguous contract that the parties had freely and voluntarily entered into.

1

In September 2019, Janjua was arrested and charged with domestic battery and endangering a child. Janjua was released on bond with the condition that he have no contact with his spouse. He was not to have contact with his minor children except "per civil orders."

On November 5, 2019, Janjua and the State entered into a 12-month diversion agreement pursuant to K.S.A. 2019 Supp. 22-2909. The State agreed to stay the domestic violence prosecution in exchange for Janjua complying with the terms of the diversion agreement. Those requirements included meeting with his case manager as directed; getting a domestic violence assessment and following its recommendations; obtaining anger management counseling and parenting counseling; submitting to random breath, blood, and urine testing; abiding by the no-contact order; and not engaging in any illegal activity during the 12-month term of the agreement. The term of the diversion agreement was to end on November 5, 2020, at which time, and upon Janjua's successful completion of his obligations under the agreement, the State would dismiss the domestic violence charges against him. The agreement also provided that "failure to fully complete any of the conditions of the agreement [would] form a sufficient basis for the diversion agreement to be revoked and prosecution resumed as outlined in said agreement."

That same date, and on the State's motion, the district court stayed the domestic violence proceedings against Janjua.

In January 2020, the no-contact order was lifted based on orders entered in a civil action that controlled Janjua's contact with his children until they reach 18 years of age.

In August 2020, Janjua moved for early termination of his diversion agreement. He asserted that he had satisfied all the diversion requirements. At the August 17 hearing on his motion, Janjua stated that he is a computer data analyst working on his PhD. He

had employment opportunities that were out of state. The pendency of this diversion agreement would impede his ability to obtain employment. He pointed out that the district court had to sign and approve the diversion agreement before it began, so "if the Court approval is necessary to start diversion, and the Court retains jurisdiction to modify diversion during the term of the diversion period, then surely the Court can terminate diversion."

Over the State's objection, the court found that it had jurisdiction over the diversion agreement to grant an early termination and granted Janjua's motion. The court terminated Janjua's diversion and dismissed the underlying case.

The State's appeal brings the matter to us.

*Mootness*

The State contends that the district court lacked the authority to order an early termination of Janjua's diversion agreement. Janjua argues the case is moot because he completed his original term of diversion.

"A case is moot when a court determines that '"it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."'" *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020) (quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 [2012]).

Cases that are moot are subject to dismissal. *Roat*, 311 Kan. at 584. We review the issue of mootness de novo. 311 Kan. at 590. Janjua, the party asserting the case is moot, bears the initial burden of establishing that the case is, in fact, moot. See 311 Kan. at 593.

3

To meet this burden, Janjua relies solely on an order of dismissal the State submitted to the court. On November 6, 2020, the day after the diversion agreement was originally scheduled to expire according to its written terms, the State submitted to the court a proposed order dismissing the underlying domestic violence case on the grounds that Janjua had complied with the diversion agreement which, by its terms, ended the day before. The court entered the order and dismissed the case.

But Janjua fails to mention that several days later, on November 11, 2020, the State advised Janjua that the order of dismissal had been submitted to the court in error. The State requested that the order be stricken. There was no immediate action by the court.

On April 16, 2021, after Janjua filed his appellate brief in this court and raised the issue of mootness, the State renewed its request that the district court set aside the dismissal of the underlying domestic violence case, and the district court did so.

Based on these facts, Janjua fails to demonstrate a prima facie showing of mootness. See 311 Kan. at 593. Furthermore, a judgment from this court would not be ineffectual for any purpose, and it could impact Janjua's rights. 311 Kan. at 584. Thus, we will address the State's appeal on the merits.

*The Termination of the Diversion Agreement*

The State argues the district court lacked the jurisdiction to order an early termination of Janjua's diversion agreement. Whether jurisdiction exists is a question of law over which our review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). Moreover, to the extent that we are required to interpret statutes, our review is likewise unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). Finally,

4

our interpretation and determination of the legal effect of written instruments is also unlimited. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

A case with strikingly similar facts is *State v. Hurla*, 274 Kan. 725, 56 P.3d 252 (2002). Hurla, facing criminal charges, entered into a 24-month diversion agreement with the State. Before completing the 24-month term, Hurla moved for an early discharge from diversion. Over the State's objections, the court granted the motion and dismissed the underlying criminal charges. On appeal, our Supreme Court stated:

> "There is nothing in the record to indicate the defendant ever sought early discharge from the district attorney. His motion for early discharge is premised on his having paid what was ordered and having completed all terms of the agreement except for the last few weeks of the 24-month diversionary term. The stated reason for the request was for the opportunity of improved employment.

> "The diversion agreement states that either party (or the court) may terminate the agreement prior to a successful completion of the *term* of the diversion program and demand that the matter be set for trial. There is nothing in the agreement authorizing a shortening of the term of the diversion agreement except to go to trial." 274 Kan. at 733.

In our present case, Janjua sought relief directly from the court without seeking an early discharge from the State, the other contracting party.

While Janjua contends that he satisfied all the terms of his diversion agreement, he fails to recognize that one of the terms was the 12-month duration of the contract. The diversion agreement states in clear and unambiguous terms: "The term of diversion extends for a period of **12 months** from the filed stamp date issued by the Clerk of the District Court for this agreement."  Moreover:  "The Defendant understands and agrees the time parameters contained within the diversion agreement are material to said

5

agreement." Janjua failed to comply with this material term of the agreement by seeking termination of the agreement without completing the remaining three months of its term.

In an effort to distinguish *Hurla*, Janjua points out that in its November 5, 2019 order staying his domestic violence case, the district court ordered that the case was stayed "until the District Attorney's Office files a motion to dismiss or to reinstate prosecution, or until further order of the Court." Janjua reads this to mean that the district court retained "jurisdiction to make additional orders in the case beyond a dismissal or reinstatement of the complaint by the State."

The parties—the State and a criminal defendant—are free to enter into a contract to divert the defendant's criminal case from immediate prosecution so long as that diversion contract complies with K.S.A. 2020 Supp. 22-2909. Under K.S.A. 2020 Supp. 22-2909(g), if the parties agree on the terms of a diversion agreement, "the diversion agreement shall be filed with the district court and the district court shall stay further proceedings on the complaint. If the defendant declines to accept diversion, the district court shall resume the criminal proceedings on the complaint."

The district court can enter an order dismissing a case upon a proper showing that the defendant has fully complied with the diversion agreement or the parties to the contract have otherwise agreed to an early termination of the contract. On the other hand, the district court can terminate the contract and order the reinstatement of the case on the active criminal docket upon the State's showing that the defendant has committed a material breach of the contract. These are the kinds of further orders of the court that are typically entered in this type of proceeding.

But there is another type of order that may have been contemplated by the November 5, 2019 order. Courts are regularly in the business of interpreting and enforcing written agreements between contracting parties. Here, the contracting parties

are the State and Janjua. A contract dispute between these two parties would certainly fall within the jurisdiction of the district court. But here there is no contract dispute. There is no claim that the contract is unenforceable. The contract appears to be clear and unambiguous on its face, and Janjua fails to demonstrate otherwise. Equity provides relief by way of reformation of the contract when there is a mistake of fact that should be corrected. *Conner v. Koch Oil Co.*, 245 Kan. 250, 254, 777 P.2d 821 (1989). But Janjua makes no claim that there was a mistake of fact in the diversion agreement, and there certainly was no evidence of a mistake. It appears that Janjua's only claim is that it would be inconvenient for him to have to perform the contract he entered into for an additional three months.

Janjua did not point to a contract provision that permits the relief he sought from the district court. To the contrary, Janjua simply asked the district court to rewrite the contract so as to set aside its 12-month operative term and allow an early termination which is found nowhere in the document and, in fact, is contrary to the express terms of the document.

The contract was to be performed over a 12-month period. Janjua claimed that during the nine months since it began, he had fully complied with all the requirements of the contract. He had not. The contract provides: "The Defendant shall not during the diversion term violate the laws of the State of Kansas, any other state, municipality, or nation." This required that Janjua abstain from any unlawful conduct for a period of 12 months from the date the contract began. He had not fulfilled this requirement when the district court terminated the contract. He had only abstained from illegal conduct for a period of nine months.

Janjua cites *State v. Caenen*, No. 108,246, 2013 WL 2991422 (Kan. App. 2013) (unpublished opinion), in which the court found an ambiguity in the diversion agreement regarding the possibility of extending the agreement beyond its original term. The panel

7

noted that since the State drafted the agreement, "ambiguities in a diversion agreement should be construed against the State." 2013 WL 2991422, at *3 (citing *State v. Patton*, 287 Kan. 200, 228-29, 195 P.3d 753 [2008]). But there was no ambiguity in Janjua's contract with the State. *Caenen* has no bearing on our present case.

It is simply not the business of the courts to rewrite clear and unambiguous contracts when there is no claim which, under law or equity, would permit the court to do so.

In *Hurla*, the defendant argued that "the district court had the ability to dismiss the case because it maintained jurisdiction over the case even though a diversion agreement had been signed." 274 Kan. at 730. In rejecting this argument, our Supreme Court noted that "[t]he court did not sign the agreement, and there was no signature line for such signature. There was a signature line for the district attorney. Defendant and his attorney signed the document." 274 Kan. at 732. The same is true here—only the district attorney, Janjua, and Janjua's attorney signed the diversion agreement. The question is not whether the district court has jurisdiction. The question is: Under what circumstances does the court have jurisdiction, and if it does, jurisdiction to do what? We conclude that under the facts presented the court's authority did not extend to rewriting the clear and unambiguous contract that was freely and voluntarily entered into.

Reversed and remanded.

8